JAMES J. TAMULSKI (SBN: 64880)
jtamulski@grsm.com
GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 875-3157
Facsimile: (415) 986-8054

Attorneys for Defendant
NYK SHIPMANAGEMENT PTE LTD
(ERRONEOUSLY SUED AS NYK SHIP
MANAGEMENT)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEREKET WOLDEGIORGIS<br><br>Plaintiff,<br><br>Vs.<br><br>NYK SHIP MANAGEMENT; DOES 1 THROUGH 10, INCLUSIVE<br><br>Defendants. | CASE NO. 3:18-cv-07678-EDL<br><br>**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Fed. R. Civ. P. 56(c)<br><br>Date: July 9, 2021<br>Time: 10:00 a.m.<br>Judge: Magistrate Alex G. Tse<br>Courtroom: E, 15th Floor<br><br>Filed concurrently with:<br><br>Notice of Motion and Motion<br>Declaration of James Tamulski<br>Declaration to George Ozene<br>Declaration of Gordon C. Lundy, M.D.<br>[Proposed] Order |

Gordon Rees Scully Mansukhani, LLP<br>275 Battery Street, Suite 2000<br>San Francisco, CA 94111

Defendant NYK SHIPMANAGEMENT PTE. LTD (hereinafter "NYK") submits this

Memorandum in support of its Motion for Summary Judgment against the causes of action

alleged by Plaintiff Bereket Woldegiorgis (hereinafter "Plaintiff") in his Complaint.

# TABLE OF CONTENTS

Page

I. BACKGROUND ...............................................................................................................1

II. FACTS ..............................................................................................................................2

III. THE LAW .......................................................................................................................7

    A. Summary Judgment Standard ...............................................................................7

    B. Duties Owed to Longshoremen ............................................................................8

        1. The Turnover Duty ....................................................................................9

        2. The Duty to Intervene .............................................................................10

        3. The Active Control Duty .........................................................................11

IV. APPLICATION OF THE LAW TO THE FACTS.........................................................11

V. CONCLUSION ..............................................................................................................14

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Case No. 3:18-cv-07678-EDL

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 8

*Bias v. Hanjin Shipping Co.*, 2009 WL 746051 (S.D.Tex. 2009) ........................................ 10, 13

*Bjaranson v. Botelho Shipping Corp., Manilla*, 873 F.2d 1204 (9th. Cir. 1988) ...................... 10

*Bonds v. Mortensen and Lange*, 717 F. 2d. 123 (4th Cir. 1983) ............................................. 11

*Carpenter v. Universal Star Shipping S.A.*,
924 1539 (9th. Cir. 1991) .................................................................................................. 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................................... 7, 8

*Delange v. Dutra Construction Company, Inc.*, 183 F.3d 916 (9th. Cir. 1999) ......................... 8

*Dow v. Oldendorff Carriers GMBH & Co.*,
397 Fed.Appx.504 (5th. Cir. 2010) .................................................................................. 13

*Foley v. National Navigation Co.*, 2009 WL 2145433 (E.D.Pa. 2009) .................................... 14

*Futo v. Lykes Bros. S.S. Co. Inc.*,
742 F.2d 209 (5th. Cir. 1984) ........................................................................................ 9, 11

*Haines v. Honolulu Shipyard, Inc.*, 125 F. Supp. 2d 1020 (D. Haw. 2000) .............................. 8

*Hansen v. United States*, 7 F.3d 137 (9th. Cir. 1993) ......................................................... 8, 14

*Hill v. Texaco, Inc.*, 674 F. 2d 447 (5th Cir. 1982) ................................................................. 11

*Howlett v. Birkdale Shipping Co.*, 512 U.S. 92 ..................................................... 8, 9, 10, 11

*Landsem v. Isuu Motors, Ltd.*, 534 F.Supp. 448 (D.Ore. 1985) ............................................. 12

*Lipari v. Kawasaki Kisen Kaisha, Ltd.*, 1991 WL 3060 (9th Cir. 1991) ................................ 14

*Matthews v. Pan Ocean Shipping Co.*,
1992 WL 59158 (E.D.Pa. 1992) ...................................................................................... 13

*McCullough v. S/S Coppename*, 1983 AMC 2547 (E.D.La. 1982), ......................................... 14

*Quevedo v. TransPacific Shipping Inc.*, 143 F. 3d 1255 (9th. Cir. 1998) ........................... 8, 11

*Raappana v. Inui Steamship Company, Ltd.*, 2008 WL 4103872 (W.D.Wa. 2008) ................ 13

*Riggs v. Scindia Steam Navigation*, 35 F.3d 1466 (9th. Cir 1994), on remand from the Supreme
Court 512 U.S. 1216 (1994), *cert. denied* 514 U.S. 1065 (1995) ..................................... 8

*River City Markets v. Fleming Foods West*, 960 F.2d 1458 (9th. Cir. 1992) ............................. 8

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Ryan-Walsh, Inc. v. Maritima Araqua, S.A.*, 1994 WL 247217 (E.D.La. 1994) .......................... 14

*Scindia Steam Navigation Co. v. De los Santos*,
    451 U.S. 156 (1981) ............................................................. 1, 8, 9, 10, 11, 12, 13, 15

*Taylor v. Moram Agencies*, 739 F.2d 1384 (9th. Cir. 1984) ........................... 11

*Wright v. Gulf Coast Dockside, Inc.*, 1998 WL 334851 ............................ 14

**Statutes**

33 United States Code Section 41 ............................................................... 9

33 United States Code
    Section 901 ...................................................................................... 1, 8

33 United States Code
    Section 905 ................................................................................... 1, 8, 9

33 United States Code Section 941 ........................................................ 9, 14

33 United States Code Section 950 ............................................................. 8

**Rules**

Federal Rules of Civil Procedure Section 56 .......................................... 7, 8

**Treatises**

29 Code of Federal Regulations Section 1917.123 .................................... 14

29 Code of Federal Regulations Section 1918.1 ....................................... 13

29 Code of Federal Regulations Section 1918.92 ................................ 13, 14

**Regulations**

Pacific Coast Marine Safety Code ("PCMSC") in 1929 ............................... 6

**Gordon Rees Scully Mansukhani, LLP**
275 Battery Street, Suite 2000
San Francisco, CA 94111

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I.    BACKGROUND

Plaintiff's Complaint alleges that on October 26, 2016, while working as a lasher for the stevedore SSA Terminals in Oakland, CA, he fell approximately 12 feet down a vertical ladder aboard the vessel M/V NYK THESEUS. As he started down the ladder, he held in his left hand a personal tool that was approximately two feet long, 2 inches wide and weighted less than 20 pounds. However, Plaintiff alleged he fell due to inadequate lighting and the presence of grease.

The Complaint alleges that NYK "negligently and carelessly owned, operated, inspected, maintained, supervised and controlled said vessel, that the ship and its equipment were in a dangerous, defective and improper condition creating a risk of injury in the loading work area to persons working and walking there."  It alleges that Defendant "knew or in the exercise of ordinary care should have known of the dangerous, defective and improper conditions then existing and failed to remedy said conditions or to otherwise adequately safeguard persons working or walking on the vessel against the conditions having had a reasonable opportunity to do so." In making those allegations, Plaintiff failed to address the applicable law, which is the Longshore and Harbor Workers Compensation Act ('LHWCA"), 33 U.S.C. §901, et seq. Specifically, §905(b) sets forth the potential liability of vessels to an injured longshoreman.

A vessel's duties to longshoremen who work aboard are extremely limited. Indeed, vessels can only be held liable for a longshoreman's injuries in certain extremely narrow circumstances – none of which existed at the time that Plaintiff fell. Accordingly, NYK respectfully requests that its Motion for Summary Judgment be granted.

The seminal case setting forth the duties and responsibilities of the  "vessel" and its operators to longshore workers for personal injuries suffered in the course of their employment is *Scindia Steam Navigation Co. v. De los Santo*s, 451 U.S. 156 (1981).  In *Scindia*, the first duty the Supreme Court recognized has become known as the "turnover duty," and it relates to the condition of the ship upon commencement of stevedoring operations.  The second duty, applicable once stevedoring operations have begun, provides that the vessel must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

of the vessel."  The third duty, called the "duty to intervene," concerns the vessel's obligation with regard to cargo operation in areas under the principal control of the stevedore.

Plaintiff did not allege that Defendant violated any of the duties.  However, the injuries occurred after the longshoremen had begun to work on the vessel, and not in an area under the "active control of the vessel." There is no basis to argue that the vessel had any duty to intervene with the stevedore's work. Thus, only the "turnover duty" is potentially applicable here. However, Defendant did not violate the turnover duty and, thus, is not liable for Plaintiff's injuries.

## II.    FACTS

At all times pertinent, Plaintiff was employed as a longshoreman by SSA Marine Terminals, Inc. (Complaint) He started working as a longshoreman in 2004. (Tamulski Decl., Ex. G, p. 20:14-15)

On October 26, 2016, SSA was to unload containers from the vessel NYK THESEUS in Oakland, California, and then later load other containers aboard. The Plaintiff and his partner Jaime Henriquez went aboard the vessel at approximately 5:15 p.m. (Tamulski Decl., Ex. G, p. 31:22-32:4; 33:12-14) They were instructed by their Walking Boss/Lashing Boss George Ozene to un-lash various containers in the area of Bay 46 in preparation for them being lifted off the vessel. (Tamulski Decl., Ex. G, p. 32:13-33:11; 39:17-21; 41:5-42:20; 120:7-13)

By the time Plaintiff and his partner finished unlashing the containers there was a lot of lashing gear on the catwalk they were walking on.  (Tamulski Decl., Ex. G, p. 32:15-33:1; 53:16-23; Ex. H, p. 8-18) However, when they first got on to the catwalk, it was clean, clear, and easy to walk on. (Tamulski Decl. Ex. H, p. 53:8-20; 54:8-11; 55:1-4.)

Sometime after approximately 7:00 p.m. Plaintiff stepped into an opening in a catwalk on the vessel, and with his handmade, personal tool he called as "lashing bar" in his left hand, he proceeded to go down the ladder. He had gone up, and down, this ladder earlier that day. The "lashing bar" is approximately 2 feet long, 2" thick," and weighs less than 20 lbs.. (Tamulski Decl. Ex. H, p. 58:23-60:8; 61:24-62:2)

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

As he proceeded down the ladder, he was also holding on to a "bar," which he also called a "pole," with his right hand, which was hard for him to reach because of his height. (Tamulski Decl., Ex. G, p. 58:23-62:2; 82:17-83:4) The "pole" is a yellow painted bar approximately 6 to 7 feet long, which is just above and to the right of the open hatch in the catwalk depicted in photograph Bates No. NYK000071, Ex. A-6 in Ex. G – Plaintiff's Depo. Transcript 82:6-83:21, and Ex. I) While climbing down through the hatch from the catwalk, while holding on to his "lashing bar" with his left hand, and the yellow pole/bar with his right hand, his right foot slipped and he fell. (Tamulski Decl., Ex. G, p.53:22-54:3; 60:23-61:25; 84:2-24; 85:7-86:7)

Mr. Henriquez testified that he also had with him a personal tool, (which he called a "rebar"), that was about three feet long that he used to unlock the turnbuckles. (Tamulski Decl. Ex. H, p. 40:16-41:20) These "personal tools" are all different shapes, thicknesses, weights. (Tamulski Decl. Ex. H, p. 76:10-19) He said some longshoremen put them in their backpacks, or make "hangers" with them, attach them to the belt buckles so that their hands are free. (Tamulski Decl., Ex. H, p. 40:16-41:20; 130:16-20) It is each longshoreman's personal choice as to how he/she wants to carry his/her personal tool. (Tamulski Decl. Ex. H, p. 130:3-33)

Once longshoremen start to work, the vessel's crewmembers are customarily not on the catwalks. They clear out and let the longshoremen do their job. (Tamulski Decl., Ex. G, p. 46:23-47:4). Mr. Henriquez confirmed there were no members of the ship's crew in the area where he was working. Tamulski Decl. Ex. H, p. 35:23-36:23)

Plaintiff testified that when it was getting darker on the ship, he called out to a "mate," i.e. someone who he believed was a member of the ship's crew, who was passing by on a level of the ship below him, and said "We need a light." However, that "mate" never responded to that statement, and Plaintiff does not know if he understood English. This "mate" walked away and never returned. (Tamulski Decl. Ex. G, p. 47:8-48:6; 52:10-22; 115:10-117:3)  Plaintiff never asked his gang boss, the lashing boss, nor anyone else for light, (Tamulski Decl., Ex. G, p. 49:20-50:6) However, he certainly had the opportunity. Plaintiff testified that he had walked off the ship, went down the gangway, took a van to a storage area ashore to retrieve a "five high

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

1    pole," rode the van back to the ship, then eventually went back up the ship to work with Mr.

2    Henriquez. (Tamulski Decl. Ex. G, p. 54:6-56:8)

3        Plaintiff testified that he and his partner Henriquez wanted light so they could better see

4    and unlock containers that were stacked five high. However, when he returned to the ship with

5    the five high pole his partner Henriquez had already proceeded to unlock the containers stacked

6    five high, without using the five high pole that Plaintiff went ashore to retrieve, and without

7    securing any additional light. (Tamulski Decl., Ex. G, p. 52:23-53:7; 54:6-55:24; 64:2-7; 66:6-

8    19)

9        At no time while working on the catwalk, did Plaintiff think it was dangerous to work

10   there. (Tamulski Decl., Ex. G, p. 66:2-5). Similarly, Mr. Henriquez never thought the ship was

11   too dangerous to work, (Tamulski Decl. Ex. H, p. 56-1-4), and he knew he had the right to stop

12   working if he did think it was too dangerous. (Tamulski Decl. Ex. H, p. 57:19-58:5)

13       Plaintiff also agreed that while working as a longshoreman on a ship, if he encountered a

14   situation that he thought was unsafe, he had the right to stop working. (Tamulski Decl., Ex. G, p.

15   66:20-24)  Mr. Henriquez also understood that his employer SSA Terminals was required to

16   provide lighting to the longshoremen if they request it. (Tamulski Decl. Ex. H, p. 43:22-44:1)

17       Plaintiff testified that after unlashing the turnbuckles from the containers he and his

18   partner dropped the turnbuckles on the catwalk. (Tamulski Decl., Ex. G, p.32:15-33:2; 53:16-23)

19   There is always grease on the turnbuckles because it is necessary to prevent them from rusting.

20   As a result, grease could have been on the catwalk after Plaintiff and Henriquez dropped the

21   turnbuckles on the catwalk. (Tamulski Decl., Ex. G, p. 67:7-21; Ex. H, p.55:1-22) However,

22   Plaintiff never saw grease on the catwalk. (Tamulski Decl., Ex. G, p. 67:7-68-2), and Mr.

23   Henriquez did not recall ever encountering any slippery conditions. (Tamulski Decl. Ex. H, p.

24   73:15-18) Further, Mr. Henriquez never felt that there was too much grease on the turnbuckles or

25   more than the usual amount of grease. (Tamulski Decl. Ex. H, p. 103:13-24)

26       Mr. Henriquez testified that he spoke with the Plaintiff about three months after the

27   accident. Plaintiff told him "And he say I fell. I couldn't help myself and that was it." (Tamulski

28

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1  Decl. Ex. H, p. 17:21-18-23)  Mr. Henriquez did not know Plaintiff had fallen until he looked

2  down through the hatch opening in the catwalk and saw Plaintiff laying at the foot of the ladder.

3  There was enough light so that when Mr. Henriquez looked down he saw water around

4  Plaintiff's head. Mr. Henriquez went down the ladder quickly and did not slip. (Tamulski Decl.

5  Ex. H, p. 28:24-29:11; 49:10-23; 130:24-131:6) Mr. Henriquez had climbed up that ladder earlier

6  that day and did not see any grease on it. (Tamulski Decl. Ex. H, p. 34:16-25; 35:3-5)

7       Plaintiff's employer SSA Terminals completed an Injury Report about his fall. (See, Ex.

8  B attached to Ex. G and Decl. of G. Ozene) It states: "While coming down from the two high cat

9  walk the claimant lost his footing and fell to the deck about 12' below. He said that his right

10  shoulder & right ankle hurt & later said that his whole body hurt." George Ozene is identified on

11  that Report as the Lashing Boss (in addition to being the Foreman and Walking Boss).

12       At about the time of the accident, Mr. Ozene was on the ship walking in the area of Bay

13  46, as he wanted to check up on the progress of the longshoremen who had been sent to the area

14  of the ship to unlash containers. While doing so he came across the Plaintiff lying at the bottom

15  of the ladder. (Decl. of G. Ozene)

16       Mr. Ozene asked Plaintiff what happened. Plaintiff replied that he had "missed a step"

17  while coming down the ladder. Plaintiff did not did say he fell because the lighting was

18  inadequate or because he slipped on grease. Mr. Ozene has confirmed that the information

19  contained on the Injury Report is correct. (Decl. of George Ozene)

20       Dr. Gordon C. Lundy examined plaintiff on November 3, 2016. (Tamulski Decl. Ex. G,

21  p. 137:8-10 and Ex. E to Ex. G). During his deposition, Plaintiff did not recall whether Dr.

22  Lundy had asked how he became injured. However, if he did so, Plaintiff said he responded

23  honestly. (Tamulski Decl., Ex. G, p. 137:21-138.3)

24       Doctor Lundy is a Board Certified orthopedic surgeon who practices in San Francisco.

25  He examined the Plaintiff on November 3, 2016, eight days after he fell. He did so at the request

26  of Homeport Insurance Company, which is the insurer of SSA Terminals, Plaintiff's employer.

27  Over the years, Dr. Lundy has performed many such examinations of longshoremen for

28

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Homeport. He always asks the longshoremen to specifically tell him how he was injured and includes the response in his report. He asked Plaintiff what happened that lead to his injuries. Plaintiff's exact words were that "… he was performing lashing duties and he grabbed a pole and misstepped." Those words are in Dr. Lundy's report. (Decl. Lundy)

The Pacific Maritime Association ("PMA") is comprised of a group of approximately 700 ocean carriers and terminal operators who operate terminals in 29 ports on the West Coast. Working in conjunction with the International Longshore and Warehouse Union ('ILWU"), which represents the longshoremen on the West Coast, they first adopted the Pacific Coast Marine Safety Code ("PCMSC") in 1929. It was created after recognizing the need for minimum safety standards for stevedoring operations. It was last revised in 2014. It sets forth the custom and practice of safety standards for the stevedoring industry from California to Alaska. Copies of relevant portions of the Pacific Coast Marine Safety Code are set forth below and attached to the Decl. of Tamulski filed herewith. (Tamulski Decl. Ex. J; note – the submitted pages of the PCMSC are enlarged from the small 4" x 3" x 1/2" booklet in which they appear, which was created so longshoremen could carry the PCMSC with them.)

The PCMSC provides in relevant part:

**Section 1          SCOPE, PURPOSE AND EXCEPTIONS**

**Rule 101.**     This Code applies to all work performed under terms of the ILWU-PMA Pacific Coast Longshore and Clerks' Agreement.

**Rule 102.**     The purpose of this Code is to provide minimum requirements for safety of life, limb and health. In cases of practical difficulty or unnecessary hardship an employer or ship may make exceptions from the literal requirements of this Code and permit the use of other devices or methods, but only when it is clearly evident that equivalent protection is provided.

**Rule 103.**     The word "shall" is to be understood as mandatory.

**Section 3          DUTIES OF EMPLOYERS**

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Rule 301.** The employer shall provide, so far as the same shall be under his control, a safe working place for all operations.

**Rule 303.** The employer shall require the use of safe processes and practices.

**Rule 304.** Employers shall provide adequate illumination. Adequate illumination is defined as light levels in walking and working areas which enable employees to safely perform assigned tasks and to be seen by other employees operating equipment. Lights shall be so placed that they do not shine in the eyes of employees.

**Section 4      DUTIES OF SUPERVISION**

The safety duties of the supervisory personnel, Walking Bosses, Ship and Dock Foremen are:

**Rule 401.** They shall see that all working condition are safe and that gear is in apparent safe working condition before and during the operation.

**Rule 408.** They shall permit operations on or in ship's docks, holds, piers or other places only when they are adequately lighted. Adequate illumination is defined by Rule 304.

**Section 15      CONTAINER SHIP SAFETY RULES**

**Rule 1501.** Employers shall provide adequate illumination. Adequate illumination is defined as light levels in walking and working areas which enable employees to safely perform assigned tasks and to be seen by other employees operating equipment. Lights shall be placed so that they do not shine in the eyes of the employees.

**III.      THE LAW**

**A.      Summary Judgment Standard**

Plaintiff has the burden of proof at trial and as a result this Court must enter summary judgment when Plaintiff fails to establish the existence of an essential element of his case. FRCP §56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). To survive a motion for summary judgment, the non-moving party must produce sufficient evidence to establish the existence of every essential element of the case on which he bears the burden of proof at trial. *River City*

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

*Markets v. Fleming Foods West*, 960 F.2d 1458, 1462 (9th. Cir. 1992). The party moving for summary judgment may meet its burden simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.,* 477 U.S. at 325. Where "the pleadings the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact," summary judgment in favor of the moving party is appropriate. FRCP §56(c). Plaintiff cannot rely on "conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen v. United States*, 7 F.3d 137, 138 (9th. Cir.1993). Moreover, the mere presence of some alleged factual dispute will not defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986)

Summary judgment is particularly appropriate in longshore injury cases given the limited duties owed by vessel owners and operators to stevedores and their longshoremen employees under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§901 – 950, as amended in 1972, 86 Stat. 1251. See, *Riggs v. Scindia Steam Navigation*, 35 F.3d 1466 (9th. Cir 1994), on remand from the Supreme Court 512 U.S. 1216 (1994), *cert. denied* 514 U.S. 1065 (1995); *Delange v. Dutra Construction Company, Inc.*, 183 F.3d 916 (9th. Cir. 1999); *Quevedo v. TransPacific Shipping Inc.*, 143 F. 3d 1255 (9th. Cir. 1998); *Carpenter v. Universal Star Shipping S.A.*, 924 1539 (9th. Cir. 1991); *Haines v. Honolulu Shipyard, Inc.*, 125 F. Supp. 2d 1020 (D. Haw. 2000).

**B.      Duties Owed to Longshoremen**

Section 905(b) of the LHWCA sets forth the potential liability of "vessels" to an injured longshoreman. A longshoreman's action against a vessel is limited to one based upon negligence, which the longshoreman has the burden of proving. 33 U.S.C §905(b). *Scindia Steam Navigation Co .v. De Los Santos* 451 U.S. 156, 165 (1981); *Howlett v. Birkdale Shipping Co.* 512 U.S. 92, 97.

The primary responsibility for the safety of longshoremen rests with the stevedore employer, for it, as opposed to the vessel, is in the best position to recognize and correct

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

conditions that present an unreasonable risk of harm to them *Scindia*, 451 U.S. at 170-71, *Howlett,* 512 U.S. at 101. Section 41 of the LHWCA requires the stevedore, as the longshoremen's employer, to provide a "reasonable safe" place to work and to take such safeguards with respect to equipment and working conditions as are necessary to avoid injury to the longshoremen, 33 U.S.C §941. The vessel is not the "employer of the longshoremen and owes no such statutory duty to them." *Scindia*, 451 U.S. at 170.

The shipowner has no general duty to discover dangerous conditions "that develop within the confines of the cargo operations that are assigned to the stevedore." *Futo v. Lykes Bros. S.S. Co. Inc.* 742 F.2d 209, 213, (5th. Cir. 1984) citing *Scindia*, 451 U.S. at 170.

Nevertheless, in certain limited circumstances the vessel can owe a duty of care to a longshoreman. Congress left the standard of care in §905(b) actions for determination by the courts, and the Supreme Court clarified the standard in *Scindia, Id.* at 166-175. The vessel owes the duty to:

(1) exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operation with reasonable safety to persons and property," and to warn the stevedore of any hidden dangers if certain conditions exist. *Id.* at 167;

(2) exercise due care with respect to the safety of the longshoremen if the vessel becomes actively involved in the cargo operation, *Id.* and

(3) intervene if the vessel knew or should have known that the stevedore's decision to continue operations despite a known hazard was "obviously improvident." *Id*. at 175.

The Court later labeled these duties the turnover duty, the active control of the vessel duty, and the duty to intervene. *Howlett*, 512 U.S. at 98.

### 1. The Turnover Duty

Before the stevedore begins work, the vessel owes a duty, i.e. the turnover duty, to exercise reasonable care to have the ship and its equipment in such a condition that the stevedore may carry out its operations with reasonable safety. The vessel also must warn the stevedore of

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

any known hidden danger. The vessel has no duty, however to warn of dangers that are obvious.

> This duty [of the vessel] extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. *Scindia*, 451 U.S. at 166; *Howlett,* 512 U.S. at 98-99.

With respect to the turnover duty, the Supreme Court in *Scindia* did not state that the ship and its equipment must be in a safe condition. Rather, the vessel must exercise ordinary care given the fact that the operations aboard will be conducted by an "expert and experienced" stevedore. This implies that certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them. *Bjaranson v. Botelho Shipping Corp., Manilla,* 873 F.2d 1204, 1208 (9th. Cir. 1988). This Court may not presume that just because there may have been an employee of the Defendant in the area that longshoremen would continue to work in an area without adequate lighting. *Bias v. Hanjin Shipping Co.*, 2009 WL 746051 at 7 (S.D.Tex. 2009).

### 2. The Duty to Intervene

The vessel has no general duty to supervise or inspect the stevedore's cargo operations to discover dangerous conditions that develop during those operations, absent contract provision, positive law or custom to the contrary. *Scindia*, 451 U.S. at 164 n.10 and 172.

> … we cannot agree that the vessel's duty to the longshoremen requires the shipowner to inspect or supervise the stevedoring operation…It would be inconsistent with the [LHWCA] to hold, nevertheless, that the shipowner has a continuing duty to take

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process. Such an approach would repeatedly result in holding the shipowner solely liable for conditions that are attributable to the stevedore, rather than the ship. *Scindia*, 451 U.S. at 168-9.

The mere presence of the vessel's crew in the vicinity of loading operation doses not prove knowledge of a hazardous condition. *Hill v. Texaco, Inc.,* 674 F. 2d 447, 450 (5th Cir. 1982); *Futo v. Lykes Bros. S.S. Co, Inc., supra* 742 F.2d at 218-220.

Even if the vessel knows of a dangerous condition it has no duty to intervene and correct the condition unless it also has actual knowledge that the stevedore will not correct the condition, indeed that the stevedore is being "obviously improvident" in failing to correct the condition. *Scindia* 451 U.S. at 175-6; *Taylor v. Moram Agencies*, 739 F.2d 1384, 1388 (9th. Cir. 1984).

Thus, after cargo operations have started, the vessel has no duty to intervene and correct a dangerous condition unless: (1) the vessel has actual knowledge of a dangerous condition; and (2) the vessel has actual knowledge that it cannot rely upon the stevedore to remedy the situation. *Quevedo v. Trans-Pacific Shipping, Inc.*, 1997 WL 33546986, at 6 (9TH. Cir. 1997).

### 3.     The Active Control Duty

The active control duty may apply if the vessel is actively in control of the stevedoring operation that leads to the injury. *Howlett,* 512 U.S. at 98. However, that duty is inapplicable here because there is no evidence that the vessel was actively involved in the stevedore's operations when Plaintiff fell. *Quevedo*, supra, at 6.

Further, once again the mere presence of crew members on deck during stevedoring operations is insufficient to implicate the active control duty as a matter of law, even if the crew members had the authority to intervene in the event an unsafe condition developed. *Bonds v. Mortensen and Lange,* 717 F. 2d. 123, 127 n. 4 (4th Cir. 1983).

## IV.     APPLICATION OF THE LAW TO THE FACTS

Even if it was dark in the area where Plaintiff fell, maintaining adequate lighting during cargo operation is the responsibility of the stevedore. *Landsem v. Isuu Motors, Ltd.,* 534 F.Supp.

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

In that case, a longshoreman slipped on oil on the deck of a ship and alleged that the shipowner was negligent in allowing the oil to accumulate, failing to clean it up, to inspect the deck and to warn the longshoreman of the presence of the oil, and for failure to provide adequate illumination of the work area. The Court noted that since *Scindia* a shipowner has no duty to inspect or supervise the stevedoring operations to discover dangerous conditions that develop during cargo operations assigned to the stevedore.

As in the case before this Court, there was no evidence in *Landsem* that any greasy, slippery condition existed when the cargo area was turned over to the stevedore. To the contrary, Plaintiff and his partner Henriquez testified when they first arrived at that catwalk it was clean and clear. It was only after they dropped greasy turnbuckles on the catwalk that grease may have been present.

However, both Plaintiff and Mr. Henriquez also testified that they never saw grease on the catwalk where they worked, and they never thought the presence of grease, or the lighting, made it too dangerous to continue working. If grease was present and caused Plaintiff to slip, it must have accumulated on the catwalk after Plaintiff and his partner began to unlash containers.

Further, there is no evidence that Defendant knew of the presence of any grease. Neither Plaintiff nor Mr. Henriquez ever complained about grease, which makes sense since they never actually saw grease on the catwalk or the ladder, Mr. Henriquez never thought it was too slippery to work, or that too much grease had been applied to the turnbuckles, and neither individual thought it was too dangerous to work. There is absolutely no evidence that any greasy condition existed when the ship was turned over to the stevedore, and no evidence that was ever informed of any greasy, dangerous condition aboard ship.

As to lighting, the Court in *Landsem* stated:

While the shipowner has a duty to warn the stevedore of hidden defects that, in the exercise of reasonable care, would be known to the shipowner, the lighting on a ship is not a hidden defect. Id. at 451

The Court went on to state that even if it accepted the longshoreman's testimony that it

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

was dark and shadowy where he fell, that evidence could not support a finding that the shipowner was negligent, because it is the duty of the stevedore, not the shipowner, to provide adequate lighting. It noted that *Scindia* confirmed that it was the duty of the stevedore to provide a safe place to work and quoted from the Safety and Health Regulations for Longshoring, 29 C.F.R. §1918.1 *et seq*, specifically 29 C.F.R. §1918.92, which states:

> (a) All walking and working areas shall be adequately illuminated …
>
> (c) Employees [i.e. longshoremen] shall not be permitted to enter dark holds, compartments, decks, or other places without a flashlight.

Absent some agreement or custom to the contrary, a vessel has no duty to provide adequate lighting for longshoremen. *Dow v. Oldendorff Carriers GMBH & Co.,* 397 Fed.Appx.504, 507 (5th. Cir. 2010) citing *Bias v. Hanjin Shipping Co.*, 2009 WL 746051 at 5 (S.D.Tex. 2009). There is no evidence of any agreement on the part of NYK to provide lighting, and the PCMSC proves that it is the custom and practice of the stevedores on the West Coast to abide by the statute and the regulations and be responsible for providing adequate lighting aboard ship.

Plaintiff admitted that for the entire time that he and his partner were unlashing on the catwalk they never thought it was too dangerous to work, even though they never received any additional lighting. Further, Plaintiff admitted that if he or his partner thought it was too dangerous to work they simply could have stopped working until lighting was provided.

Even if it true that "…it was dark and shadowy…" in the area where Plaintiff fell, that evidence would not support a finding that Defendant was negligent because it is the duty of the stevedore to, not the vessel, to provide adequate lighting. *Matthews v. Pan Ocean Shipping Co.*, 1992 WL 59158 (E.D.Pa. 1992). If Plaintiff chose to descend the ladder into a darken area, his conduct was in violation of a safety rule, and he was in control of the situation. *See,* 29 C.F.R. §1918.92, *supra*, and *Raappana v. Inui Steamship Company, Ltd.* 2008 WL 4103872 (W.D.Wa. 2008)

Courts have consistently held that a vessel has no duty to provide adequate lighting for

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  longshoremen. *See also, Lipari v. Kawasaki Kisen Kaisha, Ltd.,* 1991 WL 3060 at 2 (9th Cir.

2  1991); "([G]enerally speaking, responsibilities for lighting the work area fall upon the stevedore

3  and not the shipowner.");  *Wright v. Gulf Coast Dockside, Inc.* 1998 WL 334851 (holding that

4  the shipowner "was entitled to rely on [the stevedore] to provide adequate lighting"); *Ryan-*

5  *Walsh, Inc. v. Maritima Araqua, S.A.* 1994 WL 247217 at 3 (E.D.La. 1994) (explaining that "it is

6  the stevedoring company's responsibility," not the shiponwer's, to provide adequate lighting):

7  *McCullough v. S/S Coppename,*; 1983 AMC 2547 (E.D.La. 1982) ("T)he stevedoring company

8  that employs the longshoreman, not the shipowner, is required by stature and regulation … to

9  protect the longshoreman from the danger of poor lighting.", 1993 U.S. Dist. LEXIS 13257.

10      Lighting is a responsibility imposed on the stevedore pursuant to the regulations

11  promulgated under 33 U.S.C. §941(a), which provide that the "…employer [stevedore] shall

12  furnish and maintain employment and places of employment which shall be reasonably safe for

13  his employees in all employment covered by this chapter." 29 C.F.R. §1917.123 provides

14  "Working and walking areas shall be illuminated." 29 C.F.R. §1918.92 states: "Walking,

15  working and climbing areas shall be illuminated."  Even if a shipowner does make lighting

16  available to the longshoremen, unless there is a contract or custom to the contrary, the law and

17  the record before this Court make clear that the stevedore SSA had the responsibility for

18  providing light to the Plaintiff. *Foley v. National Navigation Co.,* 2009 WL 2145433 (E.D.Pa.

19  2009)

20      In sum, there is no evidence that the lighting was inadequate, nor that the lighting in any

21  way contributed to Plaintiff's fall. Even if lighting played a part in Plaintiff's fall, it was the

22  stevedore's responsibility to correct that condition.

23  **V.    CONCLUSION**

24      The Congress, the Supreme Court and the Ninth Circuit have clearly delineated the duties

25  of longshoremen when handling cargo – the longshoremen and the stevedoring companies they

26  work for are the experts and responsible for the longshoremen's safety. Vessel owners and

27  operators may only be found liable for injuries in narrow, well delineated circumstances, none of

28

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

which are present here. "The legal duties placed on the stevedore and the vessel's justifiable expectations that those duties will be performed are relevant in determining whether the shipowner has breached its duty." Scindia, 451 U.S. at 176,

Defendant did not violate the turnover duty because Plaintiff fell due to the fact he tried to climb down a ladder while holding onto a metal bar two feet long, two inches wide and weighing less than 20 pounds in his left hand, while holding on to a pole and then attempting to grab the ladder with his right hand. He then "misstepped" as he told his Walking Bass George Ozene shortly after he fell and Dr. Lundy eight days later.

If he fell because of grease, there is no evidence that the grease was present when the ship was turned over to the stevedore. If grease somehow contributed to his fall, Plaintiff and his partner was responsible for any role it may have played, and NYK was never aware of grease presenting any dangerous condition.

If Plaintiff fell because of inadequate lighting, that was an open and obvious condition for which the stevedore is responsible. Further, not only have the Courts overwhelmingly held that stevedores are responsible for lighting, the stevedore's responsibility is codified law.

NYK had no duty to intervene because it had no knowledge of any dangerous condition aboard the vessel that the stevedore would fail to correct. In sum, there is no evidence that NYK failed to exercise reasonable care, nor is there any genuine issue as to any material fact with respect to any of the Scindia duties. As a result, Defendant is entitled to have this Court grant its Motion for Summary Judgment.

Respectfully submitted,


Dated:  June 3, 2021                              GORDON REES SCULLY MANSUKHANI, LLP


                                        By:  _____
                                             James J. Tamulski
                                             Attorney for Defendant
                                             NYK SHIPMANAGEMENT
                                             PTE LTD

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On June 3, 2021, I served the within documents:

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

☐ **By Electronic Transmission:** by e-mailing the document(s) to the persons at the e-mail address(es) listed below. During the Coronavirus (Covid-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY ELECTRONIC TRANSMISSION:** Through the CM/ECF System which automatically generates a Notice of Electronic Filing at the time said document is filed to the email address(es) listed in the Electronic Mail Notice List, which constitutes service pursuant to FRCP 5(b)(2)(E).

Attorneys for Plaintiff
**Bereket Woldegiorgis**

Cory A. Birnberg
Birnberg & Associates
1083 Mission Street
3rd Floor
San Francisco, CA 94103
415-398-1040
415-398-2001 (fax)
birnberg@birnberg.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 3, 2021, at San Francisco, California.

_____
Terry L. Johnson

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**