BIRNBERG & ASSOCIATES
Cory A. Birnberg, Esq. (SB #105468)
1083 Mission St., Third Floor
San Francisco, California 94103
Telephone Number: (415) 398-1040
Facsimile Number:  (415) 398-2001

Attorneys for Plaintiff
BEREKET WOLDEGIORGIS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

BEREKET WOLDEGIORGIS,

              Plaintiff,

vs.

NYK SHIP MANAGEMENT; DOES 1
THROUGH 10, INCLUSIVE,

              Defendants.

) Case No.: 3:18-cv-07678-AGT
)
)
)
) MEMORANDUM OF POINTS AND
) AUTHORITIES IN SUPPORT OF
) PLAINTIFF'S OPPOSITION TO MOTION
) FOR SUMMARY JUDGEMENT
)
) Date: July 30, 2021
) Time: 10:00 a.m.
) Judge: Magistrate Alex G. Tse
Ctroom: E 15th Floor

BIRNBERG &
ASSOCIATES

1083 MISSION STREET
THIRD FLOOR
SAN FRANCISCO
CA. 94103

TEL (415) 398-1040
FAX (415) 398-2001

TABLE OF AUTHORITIES ........................................................................ iv

    I.   INTRODUCTION ................................................................. 1

    II.  JURISDICTION ..................................................................... 1

    III. STANDARD ON SUMMARY JUDGMENT ........................... 1

          A.  THIS SUMMARY JUDGMENT MOTION SHOULD BE
              DENIED AS IT IS PREMATURE, THERE IS STILL DISCOVERY
              OUTSTANDING .................................................... 1

          B.  ISSUES OF FACT FOR TRIAL ................................. 3

            1. Background Facts ............................................... 3

            (a) Post Accident ................................................. 6

    IV. ARGUMENT ........................................................................ 9

    A.  DEFENDANTS DUTIES TO LONGSHOREMAN ............. 9

        1.  Duty to Intervene Combined with Active Duty;
            Defendant had an Actual Duty To Participate
            By Providing Lighting ......................................... 10

        2.  Whether Defendant Breached Its Duty To Turnover The Vessel In A Safe
            Condition Is A Genuine Issue Of Material Fact And Not Proper for Summary
            Judgment ............................................................. 11

              a.  Regulations for Lighting .............................. 12

              b.  Custom ....................................................... 14

        3.  Defendants Cannot Avoid Liability By Any Alleged Negligence By The
            Stevedore And/Or Longshoreman ................... 15

        B.  FAILURE TO AVOID THE ACCIDENT AND/OR CALL FOR A WORK
          STOPPAGE DOES NOT PRECLUDE LIABILITY .......... 19

        C.  IT IS A TRIABLE ISSUE OF FACT WHETHER DEFENDANT
          VIOLATED THEIR OBLIGATIONS UNDER THE ISM CODE ......... 21

BIRNBERG &
ASSOCIATES

1083 MISSION STREET
THIRD FLOOR
SAN FRANCISCO
CA, 94103

TEL (415) 398-1040
FAX (415) 398-2001

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

    Case No.: 3:18-CV-07678-AGT

V.  EVIDENTIARY OBJECTIONS ....................................................... 24

    A. Declaration of James Tamulski .......................................... 24

    B.  Declaration of George Ozene .......................................... 25

    C. Declaration of Dr. Lundy .............................................. 25

VI. CONCLUSION ...................................................................... 25

BIRNBERG &
ASSOCIATES

1083 MISSION STREET
THIRD FLOOR
SAN FRANCISCO
CA. 94103

TEL (415) 398-1040
FAX (415) 398-2001

TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                       **<u>Page(s)</u>**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................... 1

*Allstate Ins. Co. v. Morgan*, 806 F. Supp. 1460 (N.D. Cal. 1992) ................... 3

*Bjaranson v. Botelho Shipping Corp.* 873 F.2d 1204, 1208 (9th Cir., 1989) ...... 9

*Cabezas v. United States* 2007 U.S. Dist LEXIS 72625 (ND Cal., 2007) ........... 22

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ....................................... 1

*Chisholm v. Pousto Corp.*, Nos. 88-15618, 89-15551,
    1990 U.S. App. LEXIS 21707 (9th Cir. Dec. 12, 1990) ........................... 3

*Clements v. Quark, Ltd.* 2007 US Dist. LEXIS 26387 (ED La, 2007) ............... 22

*Davis v. Partenreederei*, 657 F.2d 1048 (9th Cir. 1981) ................................. 18

*Digiovanni,, Jr. v. Traylor Brothers, Inc.* 1996 AMC 1132
    (1st Cir. R.I. February 6, 1996) .......................................................... 11

*Edmonds v. Compagnie Generale Translatlanique*, 443 U.S. 256 (1979)
    rehrg. denied 444 U.S. 889 (1979) ...................................................... 18

*England v. Reinauer Transportation Co.*, 194 F.3d 265, 272 (1st Cir. 1999) ...... 20

*Evans v. Transportacion Maritime Mexicana*, 639 F.2d 848, 856 (2 Cir. 1981) ... 18

*Foley v. National Navigation Co.*, 2009 WL 2145433 (E.D.Pa. 2009) ............... 14

*Fuszek v. Royal King Fisheries, Inc.* 98 F.3d 514, 517 (9th Cir., 1996) ............ 21

*Harris v. Flota Mercante Grancolombiana, S.A.*,
    730 F.2d 296 (5th Cir. La. 1984) ........................................................ 17

*In Re Pennsylvania* (1873) 86 US 125 (19 Wall.) ......................................... 23

*Kernan v. American Dredging* 355 U.S. 426 (1958) ...................................... 23

*Kyles v. Eastern Car Liners* (2004) 266 Ga.App. 784 ............................... 21,22

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

Case No.: 3:18-CV-07678-AGT

BIRNBERG &
ASSOCIATES

1083 MISSION STREET
THIRD FLOOR
SAN FRANCISCO
CA. 94103

TEL (415) 398-1040
FAX (415) 398-2001

*Korea Shipping*, 903 F.2d 606 (9th Cir. 1990) .................................................. 10, 12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ......... 1

*Moore v. M.P. Howlett, Inc*. 704 F.2d 39 (2 Cir. 1983) ................................. 18

*Morris v. Compagnie Maritime Des Chargeurs Reunis, S.A.,*
    832 F.2d 67 (5 Cir. 1987) ....................................................... 17

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099
    (9th Cir. 2000) ..................................................................... 1

*Pimental v. LTD Canadian Pacific Bul*, 965 F.2d 13 (5th Cir. 1992) ............... 10

*Revak v. Interforest Terminal UMEA AB*, 2009 AMC 1324 (E.D. Pa. 2009) ....... 17, 18

*Scindia Steam Navigation Co. v. De los Santos* (1981) ) 415 U.S. 156) ............ *passim*

*Scheuring v. Traylor Bros.,Inc*. 476 F.3d 781 (9th Cir., 2007) ..................... 17

*Scocony-Vacuum Oil Co. v. Smith* (1939) 305 U.S. 424 ............................. 15

*Subingsubing v. Reardon Smith Line* 682 F.2d 779 (9th Cir., 1982) .............. 16

*Thomas v. Newton International* 42 F.3d 1266 (9th Cir., 1994) .................... 12, 16

*Tolar v. Kinsman Marine Transit* 618 F.2d 1193 (6th Cir., 1980) .................. 17

*Walden v. United States*, 31 F. Supp. 2d 1230, 1235 (S.D. Cal. 1998) ............ 18

## Statutes

33 U.S.C.§ 905 ......................................................................... 1,15,16

46 U.S.C 3201 ......................................................................... 21

9 C.F.R. §1917.123 .................................................................... 12

9 C.F.R. §1918.92 ..................................................................... 12

33 CFR 96.100 ......................................................................... 21

33 CFR 96.120 ......................................................................... 21

33 CFR 96.210 ......................................................................... 21

BIRNBERG &
ASSOCIATES

1083 MISSION STREET
THIRD FLOOR
SAN FRANCISCO
CA. 94103

TEL (415) 398-1040
FAX (415) 398-2001

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT

33 CFR 96.230 ......................................................................................... 21

Fed. R. Civ. P. 56 ....................................................................................... 1

**Secondary Sources**

International Maritime Organization. *International Management Code for the Safe Operation of Ships and for Pollution Prevention.* 2013. ................................ *passim*

Greenman, Donald, "Limitation of Liability Unlimited",
  32 J. Mar. L. & Com. 279, 311-312 (April 2001) ........................... 23

OSHA Publication 3071, Job Hazard Analysis (revised 2002) ................. 21

Pacific Coast Marine Safety Code, ILWU-PMA (revised 2014) ............... *passim*
  Rule 201 ................................................................................... 12,13
  Rule 202 ......................................................................................... 13
  Rule 227 ......................................................................................... 13
  Rule 228 ......................................................................................... 13
  Rule 229 ................................................................................... 13,14
  Rule 304 ......................................................................................... 13

BIRNBERG &
ASSOCIATES

1083 MISSION STREET
THIRD FLOOR
SAN FRANCISCO
CA. 94103

TEL (415) 398-1040
FAX (415) 398-2001

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Now Comes Plaintiff Bereket Woldegiorgis (hereinafter "Plaintiff") and submits this Memorandum of Points and Authorities in support of his opposition to the motion for Summary Judgment brought by Defendant NYK SHIP MANAGEMENT PTE LTD (ERRONEOUSLY SUED AS NYK SHIP MANAGEMENT) (hereinafter "Defendant").

## II. JURISDICTION

This case arises under 33 U.S.C.§ 905(b), i.e. a section of the Longshore Harbor Workers Compensation Act ("LHWCA") which allows the longshoreman to sue third parties and the vessel owners for their negligence aboard a vessel in addition to any recovery or disability payments from the longshore employer.

## III. STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains.[1] Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."[2] On summary judgment, courts are required to view the evidence in the light most favorable to the nonmoving party.[3] If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate.[4]

---

[1] *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000).
[2] *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (internal quotations and citations omitted).
[3] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).
[4] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

BIRNBERG & ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

## A. THIS SUMMARY JUDGMENT MOTION SHOULD BE DENIED AS IT IS PREMATURE, THERE IS STILL DISCOVERY OUTSTANDING.

This motion is premature.[5] Defendant has blocked discovery and objected to every discoverable person or documents that will shed "light"[6] on the issues in this case. Discovery as well as meet and confers regarding discovery are ongoing. Plaintiff has previously sent discovery and received an incomplete crew list.[7] Plaintiff has filed a joint discovery dispute as to the names as addresses of the crew. Defendant listed only three crew members[8] as having discoverable information to support NYK's defenses. Defendant refuses to provide information as to these individuals address and phone number and has objected to their deposition. Defendant claims they do not represent potential witnesses: crewmen who provided statements & individuals mentioned in the injury report,[9] but refused to produce them or any contact information.[10] It was only upon receipt of the Motion for Summary Judgment, did Plaintiff see George Ozene (hereinafter "Ozene")'s address.[11] Plaintiff has noticed the deposition of Mr. Ozene and the crew; which Defendant objects to.[12] There is no statement from the crew regarding lighting that was available aboard the vessel (other than the cargo superintendent of SSAT asked the ship through the AB for additional light). The deposition of the AB Salcedo and Ozene will show the

---

[5] CAB ¶5-19.
[6] No pun intended. See CAB ¶5-7; 10-19.
[7] Hereinafter any references to depositions, will include the name & Depo. Mentions of declarations in opposition or in support of summary judgment will just have the initials or last name of the individual. Ex) The declaration of Cory A. Birnberg in opposition of the motion for summary judgment would be referred to as CAB ¶__. CAB ¶ 5-7; 10-12
[8] Capt Filip Dragos-Dan Master, Joshuah M. Cinco, The Third Officer and Benjie G. Salcedo, Able Bodies Seaman
[9] CAB ¶6: Exhibit E 3:16-20.
[10] CAB ¶18: Exhibit K
[11] CAB ¶15.
[12] CAB ¶5 Exhibit D for Depo notice of 3 crewmembers, E for Dfts Objection & Exhibit J for Depo notice of Ozene. See also CAB ¶15-16.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

specific facts that it was the ships obligation to provide lighting.[13] The depositions and request for production still outstanding prevents Plaintiff from presenting many essential facts to justify his opposition.[14]

## B. ISSUES OF FACT FOR TRIAL

There is a triable issue of fact whether the ship was to provide adequate lighting for the unlashing of the containers. Defendant says it was the Stevedore's obligation to provide lighting. The longshoremen and the stevedores say it was the ships' obligation. Plaintiff argues that the lack of light and grease from the turnbuckles caused him to lose his footing and thereafter fall. He found grease on his boots which he attributed to the grease from the turnbuckles.[15] If there had been adequate lighting he could have seen the grease on the catwalk, and the lack of lighting would have also enabled him to see better the rungs on the ladder.[16] This is a question of fact for the jury as to whether the ship was negligent in not providing adequate lighting, and also failure to maintain the ladder and catwalk free from grease. These hazards were not open and obvious because of the lack of lighting.

### 1. Background Facts

On October 26, 2016, Plaintiff was a longshoreman (employed by SSA TERMINALS[17]) who was aboard the M/V NYK THESEUS. Before Plaintiff started his shift, there was a very brief safety meeting and the lashing boss, Ozene, told them where to go and what container rows needed to be unlashed.[18] Plaintiff was part of the first longshore

---

[13] *Allstate Ins. Co. v. Morgan*, 806 F. Supp. 1460 (N.D. Cal. 1992); *Chisholm v. Pousto Corp.*, Nos. 88-15618, 89-15551, 1990 U.S. App. LEXIS 21707 (9th Cir. Dec. 12, 1990).
[14] **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
**(1)** defer considering the motion or deny it;
**(2)** allow time to obtain affidavits or declarations or to take discovery; or
**(3)** issue any other appropriate order. USCS Fed Rules Civ Proc R 56
[15] Bereket ¶9; 21-22.
[16] Bereket ¶9; 21-22.
[17] Hereinafter referred to as "SSAT"
[18] Bereket ¶4.

BIRNBERG & ASSOCIATES
1083 MISSION ST. THIRD FLOOR SAN FRANCISCO CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

gang on the ship after it arrived.[19] When Plaintiff first came aboard the ship, his shoes were clean and he used the inshore ladder, shoes were clean when he boarded the ship.

The ship was not in good condition; it had extensive rust.[20] There was water dripping on the catwalk from the refrigerated containers.[21] As part of unlashing, the ship usually puts grease on turnbuckles, and grease ends up in the catwalk.[22] The turnbuckles were well greased here.[23] Plaintiff was working with Jaime Henriquez (hereinafter "Jamie") as his un-lashing partner unlocking the cones and taking the lashing rods off the containers.[24] Plaintiff and Jamie had unlashed two different bays.[25] It was light when they did the first bay, but it got dark, and there was not enough light in the middle bay.[26] In the middle bay, there are two posts and they block the light coming through as the daylight faded.[27] The containers are about 8'6" tall, and stacked about 5 high.[28] That evening there was no moon and it was dark around 7-8pm.[29] There is a shoreside crane with lights, however it does not run when longshoremen are working.[30] The containers create shadows; where Plaintiff was working Bay 46 was very narrow and did not allow light in from outside.[31] Plaintiff and Jamie could not see the tails of the locking cones on the 5-high containers to be able to unlock them.[32] Earlier, Plaintiff saw grease on the catwalk from the

---

[19] Bereket ¶21.
[20] Diggs ¶2, 6.
[21] Jamie ¶ 15.
[22] Declaration of Cory Diggs ("Diggs") in opposition of Motion for Summary Judgment ¶8. Hereinafter the declaration is referred to as his last name, "Diggs".
[23] Bereket ¶21
[24] Bereket ¶3.
[25] The terminology used can be unlashing bays or lids (the containers were placed on the ships hatches and are often called them "lids"). Bereket ¶3.
[26] Bereket ¶5. See also Diggs 7.
[27] Bereket ¶6; Bereket Depo. 49:2-19
[28] Bereket ¶15.
[29] Bereket ¶3. See also CAB ¶8 Exhibit F
[30] Bereket ¶14; Semenero ¶ 7.
[31] Bereket ¶16-17.
[32] Bereket ¶ 5-6

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

turnbuckles in the bay they were unlashing and was able to avoid it initially.[33] As it got

darker, he had to unlash quicker to unload the containers, and it became too dark to see if

there was grease while walking on the catwalk.[34] Jamie also thought it was too dark to

notice if there was grease (or alter water on the bottom/lower deck). Jamie ¶10.

During the time Plaintiff was working, there were crewmembers (shipmates) going

upon and down ladders and various parts of the ship.[35] By the time Plaintiff reached the

second bay, it was getting darker and he asked the mate who was one level down for light.[36]

The shipmate turned and looked up at Plaintiff and then turned around; which Plaintiff

understood as- he was going to go get lights.[37] There was no one else around to ask, nor did

they have a radio.[38] The mate did not return.[39] Corey Diggs, who was also working on the

NYK Theseus that night, also thought it was dark and asked for lighting.[40] The crew he

asked were slow, brought light to the wrong end of the bay and only eventually brought it to

where Diggs was working.[41]

Plaintiff went ashore using the offshore ladder to get a larger unlocking rod at the

blockhouse (which does not contain portable lights);[42] however while he was gone, Jaime

had finished this bay with a rod he had been given.[43] No additional lighting had arrived.[44]

Plaintiff went down the catwalk to pick up his lashing bar[45] and Jaime went to the other side

---

[33] Bereket ¶9; Bereket Depo. 87:12-19.

[34] Bereket ¶9; Bereket Depo. 87:12-19; Bereket Depo. 67:7- 68:21.

[35] Bereket ¶5; Deposition of Bereket Woldegiorgis ("Bereket Depo." The deposition is not attached as it is attached as Defendant NYK Exhibit G to the Declaration of James Tamulski) 46:13-22.

[36] Bereket ¶6; Bereket Depo. 52:10-51:5; Jamie Decl. ¶7; Jamie ¶1: Jamie Depo 58:16-25.

[37] Bereket ¶ 5-6

[38] Bereket ¶6; Bereket Depo. 49:2-50: 6

[39] Bereket ¶ 5; Bereket Depo. 48:1-6

[40] Declaration of Corey Diggs in opposition of Motion for Summary Judgment (hereinafter "Diggs") ¶7.

[41] Diggs ¶7.

[42] Bereket ¶7 See picture of lashing bar; Bereket ¶15; 21.

[43] Bereket ¶7.

[44] Bereket ¶8.

[45] A Lashing bar is a piece of rebar to loosen or tighten the turnbuckles. Bereket ¶7 See picture of a lashing bar.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

of the ship to pick up his lashing bar. All of the lashing rods they unlashed were lying on the catwalk, per their training and custom.[46] Plaintiff started to go down the ladder to the lower deck.[47] There was no light at all going down the ladder.[48] With his lashing bar in his hand, his put his left foot on the first place in the ladder, and when he attempted to put his second foot on the second space, he slipped and he was unable to hold on to the ladder, falling straight down.[49] Plaintiff fractured his right ankle, elbow, and foot, suffering injuries to his right shoulder and right ankle.[50] Jamie found him some 5 minutes later, lying on the floor with liquid around his head (which he could not tell what it was, water or blood), yelled for help and other people came, including Ozene.[51] Plaintiff is unable to lash anymore due to his injury.[52]

### (a) Post Accident

After Plaintiff fell, the paramedics came in with flashlights, and then the ship brought in more lights.[53] When he returned home Plaintiff found thick grease all over the bottom of both shoes.[54] There were no witnesses of the actual accident but Plaintiff was asked to fill out the injury report.[55] Plaintiff didn't see the injury report till his deposition, thus was not able to contribute to the report to make it factually accurate.[56] After falling, Plaintiff was in pain and does not remember speaking with anyone coherently about the accident; it was

---

[46] Bereket ¶7.
[47] Bereket ¶8.
[48] Bereket 12.
[49] Bereket ¶8.
[50] Declaration of Yonatta K. Bereket, son of plaintiffs (hereinafter his declaration is referred to as "Yonatta") ¶ 1.
[51] Henriquez ¶ 15, 18.
[52] Bereket ¶ 7-9.
[53] Bereket ¶14; 24; Exhibit C; Jamie ¶ 9.
[54] Bereket ¶9· Bereket Depo. 87:12-19.
[55] Bereket ¶ 18.
[56] Bereket ¶18; Bereket Depo 118: 19-25; 119:23- 120:6. The injury report is also incorrect in that it says Plaintiff was a class B and at the time of the accident, he was Class A. Bereket 18.

BIRNBERG & ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

about 5 minutes before Jamie reached him, and Plaintiff does not recall speaking to Ozene after falling.[57]

At his deposition, Plaintiff was shown pictures of the ladder; however the pictures were not taken the date of the injury and there was additional light added from the crane in these pictures (which was not present at the time of the injury).[58] The area was cleaned up in the photographs, the rods and turnbuckles are not there and the containers have been re-lashed and/or the pictures were taken during the daylight (Exhibit F).[59] Additionally, Exhibit G of the ladder, shows greater illumination than when Plaintiff fell.[60] During the investigation of the accident, NYK (or whomever) had decided that they needed more light to properly see the scene of the accident. If they needed more light after the accident, obviously there was not enough light at the time of the accident.

Jamie was also shown pictures during his deposition: In the picture of the paramedics using flashlights which reflects the darkness at the time Bereket fell.[61] The only light was on the large shoreside crane (portainer crane) that offloads the containers. The light on the crane did not illuminate the area they were working and would not be on until the containers are unlashed.[62] It was so dark, that the paramedics had to use flashlights. Without the flashlights, it was completely dark.[63] One picture[64] shows the light from the yard side and the light that was on the crane on the dock. The light on the crane did not

---

[57] Bereket ¶ 18; Bereket Depo 121:5-122:5
[58] Bereket ¶13-14; 21
[59] Bereket ¶13; 21; 24; ¶ D-F. Both Exhibit F & G in this paragraph refer to his declaration.
[60] Bereket ¶21
[61] Jamie ¶ 9.
[62] Jaime Depo. 98:21- 99:9. See also Semenero ¶6.
[63] Jaime Depo. 98:21- 99:9.
[64] Declaration of Tamulski in support of Motion for Summary Judgment (hereinafter "Tamulski") Ex. H: Henriquez Depo Exhibit A-2

BIRNBERG &
ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

illuminate the second level where they were unlocking the rods from the cones, and the light did not come to the lower level where Bereket was laying down.[65]

Defendant attempts to use out of court, non-sworn statements Plaintiff allegedly made, after the accident as to the mechanics of injury. Defendant attempts to use this as some sort of omission, if he did not tell him <u>all the facts</u>, there must not have been grease or bad lighting or anything that caused the fall. Firstly, any conversations between Mr. Ozene and Plaintiff, if they occurred, happened right after Plaintiff had fallen and was disorientated.[66] Mr. Ozene's testimony about what Plaintiff said is irrelevant. Mr. Ozene was not a witness to the actual fall, nor did he ask how he fell.[67]

Unlike what Defendant claims, Jamie's testimony does not mean there was NOT a hazardous condition when Plaintiff was there. Jamie did not notice if there was rust or grease on the ladder because it was dark.[68] He was also aware that there is often grease around the area, which the ship should clean.[69] Defendant attempts to use Jamie's testimony to say there was no grease (ignoring his statements that it was too dark to see) and that the ability to descend a ladder quickly after seeing someone lying on the floor at the bottom of said ladder--also meant there was no grease. Jamie was not a witness to the actual accident, nor is he an investigator. He spoke with Plaintiff 3 months after the accident, and Bereket said he fell, but not how or why, nor did the conversation go further as Plaintiff was in pain.[70]

Defendant cites Dr. Lundy's (hereinafter "Lundy") report as authority on the mechanics of injury, yet Lundy did not take a history from Plaintiff-it was done by a

---

[65] Jamie ¶1: Jamie Depo 98:21- 99:9; Jamie ¶ 9.
[66] Bereket ¶ 8; 18.
[67] CAB ¶15;16
[68] Jamie ¶10; 15; 1: Jamie Depo 35:3-22; 106:4-10.
[69] Jamie ¶1: Jamie Depo 35:3-22; 55:5-22.
[70] Jamie ¶1: Jamie Depo 18:18-20:7.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

different person.[71] Lundy only examined Plaintiff for about 5 minutes. Id. Further this appointment was to evaluate his medical condition, not to investigate the facts of the accident; Plaintiff was not required to go into detail about the mechanics of the accident or provide sworn testimony. Lundy's report has several errors, first it is missing page 2.[72] Plaintiff did lose consciousness for about 5 minutes (contrary to the report),[73] and he quit smoking shortly after his injury,[74] and did exercise regularly.[75] The report says Plaintiff grabbed a pole, however he did not grab a pole, nor did he say that.[76] Plaintiff also did not miss a step--his foot slipped due to grease, which he found on his shoes when he got home.[77] Whatever Lundy implies about the lack of mention of grease at the appointment-- he cannot say with accuracy what exactly Plaintiff said about his injury.

## IV. ARGUMENT

### A. DEFENDANTS DUTIES TO LONGSHOREMAN

*Scindia Steam Navigation Co. v. De los Santos,* sets forth the (non exhaustive) categories of liability for a vessel owner, One of the primary duties of a vessel owner is to turn over the vessel to the stevedore in reasonably safe condition.[78] A ship-owner is not required to turn over a vessel free of all hazards but the vessel must be free of hazards that would prevent an expert and experienced stevedore from carrying on his operation in a reasonably safe manner.[79] In other words, any "obvious" hazard must not "present an unreasonably dangerous work environment to experienced longshoremen exercising

---

[71] Bereket ¶19; Yonatta 2-3
[72] Yonatta ¶1-2.
[73] Bereket 20.
[74] Bereket ¶ 20; Yonatta ¶2.
[75] Bereket ¶20.
[76] Yonatta ¶ 2; Bereket ¶19.
[77] Bereket ¶19.
[78] *Id.* at 167.
[79] *Bjaranson v. Botelho Shipping Corp.* 873 F.2d 1204, 1208 (9th Cir., 1989).

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

reasonable care."[80] [Generally, this type of issue is inappropriate for resolution at the summary judgment stage. "Summary judgment is *rarely* granted in negligence cases. Whether the defendant acted reasonably is ordinarily a question for the trier of fact."]. Id. Defendant did violate the turnover duty. NYK knew or should have known about the lack of lighting and grease presented a dangerous condition. The grease Plaintiff stepped on was not visible because of the lack of lighting and contributed to his fall. Plaintiff and Jamie were not at fault. Plaintiff and Defendant do seem to agree that going down the ladder is what caused plaintiff's injuries. Plaintiff's contentends that he fell down due to Defendants negligence. There is a genuine dispute in regards to the causation of the injury. This dispute can only be settled the trier of fact and is, therefore, improper for summary judgment.

### 1. Duty to Intervene Combined with Active Duty; Defendant had an Actual Duty To Participate By Providing Lighting

*Pimental v. LTD Canadian Pacific Bul,* 965 F.2d 13, 15 (5th Cir. 1992) liability under the active control duty is premised on the presence or existence of a "hazard" under the active control of the vessel.[81] The hazard in this case was the lack of lighting, caused by the ship itself. Defendant argues the vessels duties are extremely limited and they had no duty to intervene--however NYK had a duty to intervene; it had knowledge of any dangerous condition aboard the vessel, both the inadequate lighting and the grease. Since the lighting had to be provided by the ship, and both Plaintiff and the cargo superintendent asked for more lighting, the ship had a duty to intervene. The ship was actively involved in the unlashing as they were asked to provide more lighting and failed to do so. The ships active duty was to provide the lighting according to the PCMSC and the custom and practice. It was completely dark, only a 16% moon, and the 5 high containers blocked out

---

80 *Martinez v. Korea Shipping,* 903 F.2d 606, 610 (9th Cir. 1990).
81 *Pimental,* 965 F.2d at 16.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

any light.[82] The ship is under a duty provide the lights, intervene and were actively involved as she had the lights. The ship also failed to warn the Plaintiff and longshoremen that it did not have lights.

> "[t]he vessel owner "must alert the stevedore-employer to any latent or concealed defect including 'any hazards on the ship or with respect to its equipment' which are 'known to the vessel [owner] or should be known to it in the exercise of reasonable care' and which 'would likely be encountered by the stevedore in the course of his cargo operations[,] are not known by the stevedore[,] and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.'"[83]

> "Once the two duties of care incident to "turnover" are met and the vessel or vessel area has been turned over to an independent stevedore, the three continuing duties of care incumbent upon the vessel owner are even more constricted: First, the vessel owner might remain under [] a [continuing] duty were it to retain actual physical control or custody of a portion of the vessel, or participate in stevedoring operations. ( it was in this case- to provide lighting) Second, a duty to intervene might attach in the event the vessel owner were to acquire actual knowledge that "unsafe conditions" had developed in the vessel's appurtenances since turnover, that the stevedore will not address the unsafe condition, and that the stevedore's decision not to remedy the developing hazard was "obviously improvident" in the circumstances. Third, even absent actual control, participation or knowledge, a post-"turnover" duty may arise if the vessel owner was obligated, by contract, statute or custom, to monitor stevedoring operations for the purpose of detecting and remedying unsafe conditions."[84] (parenthetical comment added)

Defendant was obligated by contract and custom to provide adequate lighting. Defendant knew that there was insufficient lighting at night based upon the phase of the moon.

## 2. Whether Defendant Breached Its Duty To Turnover The Vessel In A Safe Condition Is A Genuine Issue Of <u>Material Fact And Not Proper for Summary Judgment</u>

Defendant owed a duty to turnover the vessel in a safe condition. The duties shipowners owe to longshoremen are "turnover duty", "active control of the vessel", and

---

[82] Bereket ¶3; CAB ¶8 Exhibit F. See also Semenero ¶6.

[83] (citations ommited) *Digiovanni,, Jr. v. Traylor Brothers, Inc* 1996 AMC 1132, 1137-1138 (1st Cir. R.I. February 6, 1996)

[84] (citations omitted). *Digiovanni,, Jr. v. Traylor Brothers, Inc*. 1996 AMC 1132, 1138 (1st Cir. R.I. February 6, 1996)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN  OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
-11-
Case No.: 3:18-CV-07678-AGT

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

the "duty to intervene."[85] The turnover duty is both the turnover duty of a safe condition and the turnover duty to warn.[86] Defendant turned over the NYK with an unreasonably dangerous work environment in Bay 46, the direct result from which Plaintiff was injured. There was no other way to unload the cargo than the one utilized by plaintiff in Bay 46. In order to secure the containers, the crew puts grease on the turnbuckles and then the crew is supposed to clean up the grease.[87] If the crew does not clean it up, the longshoreman have to try to avoid the grease; which is hard to do at night.[88] NYK knew or should have known there was an unreasonable hazard for the longshoremen with poor lighting and grease, and that this is true even if the longshoremen appreciated the risk or not.

### a. Regulations for Lighting

There are statutes and guidelines for illumination of working areas.[89] Contrary to Defendant's claims, it a vessel's duty to provide adequate lighting to longshoremen. It is both custom & in regulations that the ships to provide the lighting.[90] NYK, the defendant in this case is a member of the Pacific Maritime Association (PMA)[91] and participates in the safety rule making; the safety code was written jointly for PMA by the shipping lines and the stevedores.[92] Under the Pacific Coast Marine Safety Code ("PCMSC"), rule 201 the

---

[85] *Id. at 98, citing Scindia Steam, supra.* 415 U.S. 156. See also *Thomas v. Newton International* 42 F.3d 1266 (9th Cir., 1994).

[86] "One of the primary duties of a vessel owner is to turn over the vessel to the stevedore in reasonably safe condition. *[citation omitted].* Although a shipowner is not required to turn over the vessel free of all hazards, **the vessel must be free of hazards that would prevent an expert and experienced stevedore from carrying on his operation in a reasonably safe manner** *[citation omitted].* In other words, **any "obvious" hazard must not 'present [] an unreasonably dangerous work environment to experienced longshoremen exercising reasonable care.'"** (*emphasis added*). *Thomas, supra.* at 1269, citing *Martinez v. Korea Shipping,* 903 F.2d 606, 610 (9th Cir. 1990).

[87] Diggs ¶8. Henriquez ¶16.

[88] Diggs ¶8.

[89] 9 C.F.R. §1917.123 provides "Working and walking areas shall be illuminated." 29 C.F.R. §1918.92 states: "Walking, working and climbing areas shall be illuminated."

[90] Semenero ¶6.

[91] CAB ¶ 2-3.

[92] Semenero ¶ 4-7.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

vessel is required to provide safe ships gear and equipment in a safe working place for the longshoreman. Under rule 202 the ship is required to inspect the gear before the gear is used for stevedoring operations which would include lighting in the area of the cargo, for unlocking at night and the tween deck areas. NYK will <u>not</u> divulge the whereabouts addresses and phone numbers of its crewmembers so Plaintiff is deprived of the ability to take the deposition to find out what inspections were made and what lighting was provided and available. PCMSC rule 227 states it is the <u>ships obligation</u> to provide an adequate quantity of cargo lights for night work. The ship is obligated to provided lighting to comply with rule 304, a land based obligation (which provides that there must be adequate illumination for cargo work for the longshoreman to safely perform the assigned task). Rule 304 provides that there must be adequate lighting for one employee to see the other employee operating equipment. PCMSC rule 228 requires the ship to have lights lines for lowering & raising cargo lights to light the areas where there are no lights. Rule 229 says that the ship must provide deck and 'tween deck lighting, mast lights, and outlets shall be maintained in usable condition and tested at frequent intervals. There is <u>no</u> evidence by NYK that these light fixtures were of usable condition, or even existed and of course there was no light in the area in which the plaintiff and his partner were working.

PCMSC Section 2, is specifically directed to the owners and/or operators of <u>vessels</u>, such as Defendants.

**Section 2: Duties of Vessels of All Types**
**Rule 201. The owners and/or operators of vessels shall provide safe ship's gear and equipment and a safe working place for all stevedoring operations on board ship.** (emphasis added)
Rule 227. An adequate quantity of cargo lights in good condition and with proper size bulbs shall be provided before night work starts. Adequate illumination for night work shall be in accordance with Rule 304.
Rule 228. Cargo light reflectors shall be kept clean and in good condition. Lines shall be attached for lowering or raising cargo lights unless the cord is designed to suspend the light.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

Rule 229. Permanent deck and 'tween deck lighting fixtures, mast lights and outlets shall be maintained in useable condition and tested at frequent intervals.

Defendants were obligated to make sure that there was adequate lighting. Arguments that Jamie was able to see Plaintiff lying on the floor-does not mean there was enough light to see grease. Jamie saw liquid around Plaintiff[93] which was water or blood (due to poor lighting it may have been unclear). Whether there was or was not proper lighting or if Defendant is liable is also a question of fact and improper for summary judgment.

### b. Custom

Defendant cites to a *Foley v. National Navigation Co.*, 2009 WL 2145433 (E.D.Pa. 2009), where the court held a stevedore responsible for providing light to the Plaintiff-- unless there is a contract or custom to the contrary. Here there was custom regarding the providing of lighting. SSAT does not have portable lighting to send to the ships.[94] There can be five to seven ships in port and in one terminal and SSA could not provide lights to the ships.[95] The lights on the dock, finger, wharf where the containers, chassis are stored or off loaded to, or are prepared for loading are managed by the stevedore and at SSA, by SSA.[96] The stevedore company provides the lighting for the shoreside work.[97] It is part of the job of a yard supervisor, and at night, make sure there is adequate lighting for the work being done.[98] The ships that come to SSAT are aware that there is no lighting provided by SSAT.[99]

---

[93] Tamulski Decl. Ex. H, p. 28:24-29:11; 49:10-23; 130:24-131:6)
[94] Declaration of Henry Pellom ("Pellom") in opposition of motion for Summary Judgment ¶3; Declaration of Dean Wilson ("Wilson") in opposition of motion for Summary Judgment ¶ 2.
[95] Pellom ¶ 3
[96] Pellom ¶ 3.
[97] Pellom ¶ 3.
[98] Pellom ¶ 3.
[99] Wilson ¶3. Semenero ¶ 6-9.

BIRNBERG & ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

The ship always provides the lights for working at night.[100] It is not the custom to ask the stevedoring company for more lights, it is the custom to ask the ship.[101] The ship provides portable lights which can be hung[102] and lights on a line which can be lowered/raised.[103] The crew has faster access to lighting and extension cords, and control of the fixed/permanent light which can be turned on from the ships controls.[104] On the ship, the ship is responsible for providing lighting and a safe place to work at night. The ships are aware of where outlets are, where the permanent lighting or portable lighting can be turned on.[105] Because of their ability to provide lighting and portable lighting for the areas for their particular ship, which they are familiar with, the terminal does not provide the lighting for the longshoremen.[106] Here it was custom to ask the ship for what you need, including lights, a request which is always answered.[107] Whether or not Defendant breached its duty/custom to turnover the vessel in a safe condition and acted reasonably is a question of fact and therefore is not appropriate for summary judgment.

### 3. Defendants Cannot Avoid Liability By Any Alleged Negligence By The Stevedore And/Or Longshoreman

Claiming contributory negligence or comparative negligence is not the same as assumption of the risk.[108] "Any argument that the avoidability of a hazard should be analyzed separately from its dangerousness is simply a disguised assumption of risk or contributory negligence argument. Such arguments are completely inconsistent with the Longshore and Harbor Workers' Compensation Act. Congress intended to abolish the use of

---

[100] Bereket ¶10; Bereket Depo. 70:10-71:7. Diggs ¶7.
[101] Diggs. ¶ 3. Semenero ¶ 6-9. Jamie ¶ 3-4, 11-12. Pellom ¶ 2, 4-5. Wilson ¶2.
[102] Bereket ¶10; Bereket Depo. 70:10-71:7. Pellom ¶ 2.
[103] Pellom ¶ 2.
[104] Diggs ¶ 4. Jamie ¶ 3-4, 11-12.
[105] Pellom ¶4.
[106] Pellom ¶ 4.
[107] Jamie ¶ 8; Bereket ¶10; Bereket Depo. 70:10-71:7; Pellom ¶5; Semenero ¶6.
[108] *Scocony-Vacuum Oil Co. v. Smith* (1939) 305 U.S. 424, 431-432.

BIRNBERG & ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

assumption of risk and contributory negligence defenses when it designed this statutory scheme."[109] By claiming that it does not have liability towards Plaintiff because he did not stop working, Defendant is essentially raising an assumption of the risk defense which is prohibited under LWHCA §905(b).[110]

Blaming Plaintiff and/or his co-workers and/or blaming the stevedore company or longshoremen for allegedly not inspecting the area, does <u>not</u> eradicate Defendants' liability.[111] A lashing bar or rebar is used to loosen and tighten the turnbuckles.[112] It is about ¾ in diameter[113] and it is not heavy.[114] Defendant first theorizes the rebar tool was a contributing factor; however it is the custom of longshoremen to use them.[115] Each rebar tool is owned by the individual longshoreman.[116] There is a safe way to go up and down ladders with the rebar.[117] Defendant may blame Plaintiff for going into a dark area, but experienced longshoreman, some with decades of experience, disagree.[118] The issue of comparative fault is a triable issue of fact.

"'Summary judgment is *rarely* granted in negligence cases. Whether the defendant acted reasonably is ordinarily a question for the trier of fact.'"[119] In both *Martinez* and *Thomas* the court ruled that the determination of whether there was an unreasonably dangerous condition, even for experienced longshoremen exercising reasonable care, is a

---

[109] *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1271 (9th Cir. Cal. 1994).

[110] *Scindia v. De Los Santos, supra* at 176, fn. 22 ["We agree with the Court of Appeals that the shipowner may not defend on the ground that Santos should have refused to continue working in face of an obviously dangerous winch . . . the defense of assumption of risk is unavailable in § 905 (b) litigation."]

[111] *Subingsubing v. Reardon Smith Line* 682 F.2d 779 (9th Cir., 1982).

[112] Jamie ¶14.

[113] Bereket ¶7 See picture of lashing bar; Bereket 15; 21. The lashing bar is rebar and it is only about ¾" in diameter. Bereket ¶8

[114] Bereket ¶7-9

[115] Bereket ¶7-9, 11

[116] Bereket ¶ 7-9, 11.

[117] Semenero ¶10.

[118] See declarations of Pellom; Bereket; Semenero & Diggs.

[119] (*emphasis in original*). *Thomas, supra*, at 1269, citing *Martinez, supra*, at 609.

BIRNBERG &
ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

triable issue and cannot be determined by summary judgment.[120] "Moreover, the open and obvious nature of the hazard is not sufficient to preclude a shipowner's potential liability, [*citation omitted*] because [a] vessel owner remains liable if a longshoreman's only alternatives to the open and obvious hazard are unduly impracticable or time-consuming."[121] Defendant created an unreasonably dangerous work environment for those discharging the cargo. Plaintiff contends that the poor lighting, as well as grease on the ladder and around the ship imposes an unreasonable hazard for the longshoremen. There is a hazard, whether the longshoreman appreciates the risk or not; and they will get hurt sooner or later due to uncontrollable factors. Other than climbing up and down the ladder, with a tool, there was no alternative in the manner in which the cargo could be unloaded. It is also the custom to carry the rebar up and down ladders.[122] Here, there was no alternative – either face the dangerous condition and unload the cargo or leave the job and face the serious ramifications for delaying work. The longshoremen did comply with the safety regulations required of them.

At best the shipowner's liability may be reduced "but that liability is not eliminated by the negligence of stevedore or the longshoreworker." *Id.* at 780. Defendants would be required to prove the negligence act or omission by plaintiff.[123] It is also possible for both the stevedore and the vessel owner to be negligent.[124] It is not only the stevedore company's

---

120 See also, *Scheuring v. Traylor Bros.,Inc.* 476 F.3d 781 (9th Cir., 2007).
121 [*citations omitted*]. *Revak v. Interforest Terminal UMEA AB*, 2009 AMC 1324, 1341 (E.D. Pa. 2009). See also: *Morris v. Compagnie Maritime Des Chargeurs Reunis, S.A.,* 832 F.2d 67, 70 (5 Cir. 1987) [The vessel owner's turnover duty is not implicated unless the contractor's "only alternative would be to leave his job or face trouble for delaying work."]; *Harris v. Flota Mercante Grancolombiana, S.A.,* 730 F.2d 296, 299-300 (5th Cir. La. 1984) ["But that the danger was obvious is not necessarily a complete defense to a longshoreman's suit, because when faced with an openly dangerous shipboard condition, the longshoremen's only alternatives would be to leave his job or face trouble for delaying the work.
122 Jamie ¶14; ¶1: Jamie Depo. 40:16-43:11; 76:10-22; 104:19-105:14; 130: 3-23; 132:1-133:17
123 *Tolar v. Kinsman Marine Transit* 618 F.2d 1193 (6th Cir., 1980).
124 *Martinez, supra,* at 611.

BIRNBERG & ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

duty to a vessel safe for the longshoreman.[125] Defendant's liability is not abolished in light of and (alleged) negligence by the stevedore.[126] "'The shipowner is not relieved of liability as a matter of law simply because it relied on the stevedore to correct the condition . . . or because it relied on the stevedore's judgment to proceed with the work in spite of the condition.'"[127] Courts have held that '[i]n such circumstances the question whether the owner's actions were negligent or not was for the jury to decide.'[128]

Summary judgment in this case is inappropriate. Plaintiff need only show that the shipowner was liable 1% to obtain a verdict for the entire amount of his damages.[129] Plaintiff cannot be charged with any negligent conduct on the part of his employer (the stevedore company) or any of his fellow longshoremen and recovery against defendants cannot be reduced by their alleged negligence.[130] Plaintiff submits that there are definitely triable issues of fact that the defendants herein are liable, at the very least 1% of the Plaintiff's injuries, or at least that matter should be submitted to the jury for their determination and the court should not deprive plaintiff of his day in court. Such determinations are questions of fact for the jury and are not proper on summary judgment.

## B. FAILURE TO AVOID THE ACCIDENT AND/OR CALL FOR A WORK STOPPAGE DOES NOT PRECLUDE LIABILITY

Defendants may note that none of the longshoremen, including plaintiff, called for a work stoppage (or "standing by on safety"). Defendant ignores the fact that Plaintiff did ask

---

[125] *Martinez*, at 611 ["Likewise, it is possible for both the stevedore and the vessel owner to be negligent."].
[126] *Subingsubing, supra,* at 780
[127] *Moore v. M.P. Howlett, Inc.*, 1983 AMC 1778, 1782, 704 F.2d 39, 42 (2 Cir. 1983) (citations omitted). see also *Evans v. Transportacion Maritime Mexicana*, 639 F.2d 848, 856 (2 Cir. 1981) ('Ordinarily, a ship should be entitled to rely on its stevedore to perform its job in a safe and workmanlike fashion. But we cannot hold that whenever control is relinquished to the stevedore, the shipowner may, as a matter of law, 'rely' on the stevedore.').
[128] *Moore*, 1983 AMC at 1782, 704 F.2d at 42 (citations omitted)." *Revak, supra.* at 1340.
[129] *Edmonds v. Compagnie Generale Translatlanique*, 443 U.S. 256 (1979), *rehrg. denied* 444 U.S. 889 (1979).
[130] *Id.* See also, *Walden v. United States*, 31 F. Supp. 2d 1230, 1235 (S.D. Cal. 1998). "Defendant United States [vessel owner] and Dolphin Industries [employer] maintained concurrent control over the air duct. Defendant United States is still liable for plaintiff's damages, with no offset for any Dolphin Industries negligence. *Davis v. Partenreederei*, 657 F.2d 1048 (9th Cir. 1981); *Edmonds,* [*supra*]." *Walden* at 1234.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

for more light so they could better unlock containers that were stacked five high.[131]

Knowing that you have a right is not the same as feeling free to exercise it. Due to the ships schedule, and the gangs working on the ship to unload the containers, there is pressure to do the job quickly.[132] It is a dangerous job, and if the ship does their job, it is less dangerous."[133] While it is true that longshoremen technically have the right to "stand by on safety" where a dangerous condition is present, in reality this "right" is reserved to situations of imminent harm, such as toxic fumes. Moreover, had one of the longshoremen declared a work stoppage because of the bad condition of the area, they very likely could have been subjected to severe ramifications including the possibility of losing their job. That is not customary for a longshoreman to "stand by on safety" because of a bad stow is relevant to whether or not they can do so in reality. Unlike some industries, the custom within the maritime industry is given a great deal of weight. Custom alone can even create a duty owed by the vessel.

 Defendant's argument does not take into the reality of the situation, including the custom and practice, in regards to discharging cargo. The portainers (cranes) will load or unload a container every 2 minutes, moving extremely fast and leaving little room for error.[134] The magnitude of stopping the whole unloading and loading process would have made him liable for hundreds of thousands of dollars.[135] If Bereket had done a work stoppage, he would have been fired.[136] Plaintiff did not call for a work stoppage because he expected the mate to come back with light;[137] a remedy was in process.[138] Therefore, the

---

[131] Bereket ¶15.
[132] Bereket ¶23.
[133] Bereket ¶23.
[134] Semenero ¶2.
[135] Bereket ¶23.
[136] Bereket ¶23.
[137] Bereket ¶23.
[138] Bereket ¶23.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

fact Plaintiff did not stop work in light of unreasonably hazardous conditions in Bay 46, is not dispositive of whether or not the stowage was in fact unreasonably hazardous because it is the ordinary custom within the maritime industry to <u>not</u> call for a work stoppage on the grounds of safety, unless the hazard is extreme and imminent.[139]

Moreover, the longshoreman's failure to "stand by on safety" does not absolve defendant of liability. In light of the dangerous condition in Bay 46, plaintiff's only alternatives were to do the best job he could under the circumstances, or delay the unloading of the cargo and face the most unpleasant consequences. That he, and the other longshoreman, chose to unload the cargo in the safest manner possible, notwithstanding the dangers, does not bar his recovery.

"There may be circumstances in which a hazard can be easily avoided but some other factors present make it nonetheless unreasonably dangerous. [*citation omitted*]. . . . customary practice may suggest that a shipowner should know that longshore workers frequently confront rather than avoid a type of obvious hazard. If so, the shipowner may be negligent in not eliminating the hazard."[140]

It was not the custom to call for a work stoppage for a "bad stow" there was no other alternative but to discharge the cargo in the way that was done.[141] The only way to unlash the cargo, was how Plaintiff was doing it. Plaintiff could not obtain a portable light from the blockhouse, Plaintiff asked for light (the crane was not used for this purpose). It was either face the dangerous condition and unlash the cargo or leave the job and face the serious ramifications for delaying work. Thus, Plaintiff, unlashed in the only way possible. Clearly it would be up to the trier of fact to ascertain if there was no alternative but to continue

---

139 See, for example, *Scindia, supra,* at 451 U.S. at 172. *England v. Reinauer Transportation Co.*, 194 F.3d 265, 272 (1st Cir. 1999) ("The plain language of *Scindia Steam* clearly suggests that custom alone is sufficient to create a duty owed by a vessel to a longshoreman.").

140 (*internal quotes omitted*). *Thomas, supra* at 1271.

141 Bereket ¶ 1-22. See also declarations of Pellom; Semenero; Diggs.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

despite the dangerous condition presented in Bay 46. Such an issue is not proper for

summary judgment.

## C. IT IS A TRIABLE ISSUE OF FACT WHETHER DEFENDANT VIOLATED THEIR OBLIGATIONS UNDER THE ISM CODE

Plaintiff has asked Defendant to produce the ISM Code (International Management

Code for the Safe Operation of Ships and for Pollution Prevention (hereinafter "ISM

Code"), which they have failed to do so.[142] The ISM code & 33 C.F. R. Part 96 requires a

safety management manual and risk assessment for prevention of human injury and for safe

working environments;[143] which is applicable to Defendant. The owner, operator, or

designated responsible person for the vessel (33 CFR §§96.120 and 96.210) must establish

a "safety management system" or "plan" which must:

> (a) "**Provide for safe practices in vessel operation and a safe work environment onboard** the type of vessel the system is developed for; (b) **Establish and implement safeguards against all identified risks**; (c) **Establish and implement actions to continuously improve safety management skills of personnel ashore and aboard vessels…** (*emphasis added*) 33 CFR 96.230.

A "risk assessment" or "job hazard analysis" by the responsible party is the first step in

establishing and then implementing safeguards. This first duty can be found in OSHA

regulations.[144] In maritime law a violation of a regulation, including safety regulations, can

constitute negligence *per se* or at the very least it's another criteria in determining whether

the ship has exercised reasonable care.[145] The ISM code provides additional or other

---

[142] CAB ¶18

[143] The United States adopted the ISM Code. See 46 USC 3201. The regulations enforcing the ISM Code are at 33 CFR 96.100, *et seq*

[144] OSHA Publication 3071, Job Hazard Analysis (revised 2002) provides a definition of a hazard "A hazard is the potential for harm. In practical terms, a hazard often is associated with a condition or activity that, if left uncontrolled, can result in an injury…" and definition of a job hazard analysis "A job hazard analysis is a technique that focuses on job tasks as a way to identify hazards before they occur. …"

[145] *Fuszek v. Royal King Fisheries, Inc.* 98 F.3d 514, 517 (9th Cir., 1996); *Kyles v. Eastern Car Liners* (2004) 266 Ga.App. 784.

BIRNBERG & ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

standard in addition to general maritime law and the *Scindia*[146] for Defendant to establish safeguards against all identified risks and improve safety management skills of personal. The NYK had no lighting plan for the proper illumination of access ways, considering the shadows created by containers that were stowed in the area to be lit.[147] Plaintiff's work area in Bay 46 was very narrow and did not allow light in from outside and the ship had no lighting system for each working space between the container bays, which is bright enough, for the work to be done, and minimizes glare to the lashers.[148] Most ships have a permanent lights and are bright enough in illumination intensity to reach the uppermost areas where cargo has to be lashed or unlashed.[149] Defendant has not produced its ISM code manual. Here, there was no job hazard analysis done; thus, no safety management plan and no safeguards implemented that could have led to plaintiff's accident being avoided. Whether a plan identifying the hazards of tightly packing containers, limited light with the presence of grease, could have avoided the accident, is a question for the trier of fact.[150] It was possible for the NYK to be more well lit; Plaintiff a different ship that was very well lit.[151] Defendant did nothing to remedy that thus Defendant failed to abide by their ISM Code responsibilities.

---

[146] *Scindia Steam Navigation Co. v. De los Santos* (1981) ) 415 U.S. 156.
[147] Bereket ¶16.
[148] Bereket ¶16.
[149] Bereket ¶16.
[150] *Kyles v. Eastern Car Liners* (2004) 266 Ga.App. 784, 788[150] ["The ISMC changed the custom and practice in the maritime industry and increased the burden on ship owners to ensure the safety of laborers . . . The fact that . . . no steps [were taken] to stop the dangerous [condition] <u>could</u> be found to indicate a violation of the ISMC. Thus, **a jury issue exists as to whether the ISMC was violated and whether that proximately caused [plaintiff's] injuries.**" (*emphasis added*).]See also, *Clements v. Quark, Ltd.* 2007 US Dist. LEXIS 26387 (ED La, 2007) [The fact that there was no safety management system in place to identify and safeguard against risks from which plaintiff was injured, as required by the ISM Code, precluded summary judgment.] and *Cabezas v. United States* 2007 U.S. Dist LEXIS 72625 (ND Cal., 2007).
[151] Bereket ¶22.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

In *Kernan v. American Dredging* 355 U.S. 426[152] the Court held that even a non-negligent violation of a safety regulation can result in liability as a matter of law. The Court found that the clearly violated regulation, although not enacted to protect seamen from fire on the water, was sufficient for liability. Defendant is the owner of a cargo vessel, designed for the loading, transportation, and unloading of cargo. The purpose of regulations to prevent casualties due to negligence, and conducting a job hazard analysis on the loading and unloading of such cargo in order to establish and implement safeguards to prevent casualties and severe injuries, such as those suffered by plaintiff. This is not just a slip and fall case.

> One safe prediction is that lawsuits will have a new dimension when casualties occur on vessels subject to the ISM Code. The Code is also, in the long run, likely to reduce the number of those lawsuits. If the history of marine safety regulation--boiler safety valves, load lines, SOLAS requirements, pollution laws, and the like--presages the effects of the ISM Code, **the Code will reduce the number of casualties, including those that end up in court. Raising the standard of conduct to which all owners must comply takes cutting corners out of the calculus of cost by which owners compete commercially, so that the tide of safer operation will flow. The benefits, of course, depend on adherence to the Code** as something more than papers only to be kept in a dusty file.
> (*emphasis added*). Greenman, Donald, "Limitation of Liability Unlimited", 32 J. Mar. L. & Com. 279, 311-312 (April 2001)

The ISM Code has been incorporated into federal maritime law and custom. Defendant was in violation of the ISM Code by failing to adopt proper procedures. Had Defendants performed a job hazard analysis, had they established and implemented safeguards, and whether such safeguards would have prevented plaintiff's injuries are all questions of fact for jury. However, under the "Pennsylvania Rule" a violation of a mandatory rule or regulation shifts the burden to the Defendants to show that the violation could not have caused the injury.[153]

BIRNBERG & ASSOCIATES
1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

---

152 (Coast Guard navigation regulation requiring that lanterns be a certain height to be seen by other ships. The lamp was hung too low, it ignited vapors on the surface of the river causing a fire which killed a seaman)
153 *In Re Pennsylvania* (1873) 86 US (19 Wall.) 125.

## V. EVIDENTIARY OBJECTIONS

### A. <u>Declaration of James Tamulski</u>

Plaintiff objects to Paragraph 2, Exhibit G, which is the Injury report attached as Exhibit B to Deposition of Bereket Woldegiorgis as lacking foundation and hearsay. It does not contain Plaintiff's statements. The apparent author did not do a declaration as to how, when, where he got the information for the injury report. The Injury report is hearsay. There is no evidence that this document is acceptable as a business record. A deposition of Dsilva will show that the injury report was compiled from different sources.

Plaintiff objects to paragraph 3, Tamulski declaration, as Exhibit H not a complete copy of the deposition transcript of Jaime Henriquez; the deposition is 135 pages.[154] Plaintiff further objects to the photographs attached to the deposition of Jaime Henriquez as Exhibit C. The photos[155] do not represent the scene of the accident and in fact were taken later[156] after the ship was cleaned up.[157] Plaintiff objects paragraph 5 & Exhibit J, as the pages applicable to lighting are incomplete. The Exhibit is an out of court statement from an unidentified person, lacking foundation. Plaintiff objects to paragraph 6, Exhibit K, as hearsay and non-relevant. The screen shot is not identified as to the date of web page nor the author. The pictures only depict dockside work and not relevant to lashing or unlashing, climbing ladders and ignores the duties of the vessel.

### B. <u>Declaration of George Ozene</u>

Plaintiff objects to the declaration of George Ozene. He lacks personal knowledge of the injury and the injury report attached to the declaration, lacks foundation, is not

---

[154] The Deposition itself ends on page 135. The declaration only attaches 118 pages and stops halfway down the page. The deposition questioning by plaintiff's counsel started on page 131. See Jamie ¶1: Exhibit B: Jamie Depo. Defendant cites to 130:24-131:6 of Mr. Jamie Henriquez deposition, which is not included in their exhibit.
[155] Henriquez Depo.  65:25- 66: 23
[156] Tamulski Ex. H: Henriquez Depo Exhibit A-5 was taken during the day and the containers are lashed.
[157] Henriquez ¶17.

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA. 94103
TEL (415) 398-1040
FAX (415) 398-2001

authenticated and is hearsay. Ozene did not state that he filled out the report. He is adopting an unverified, hearsay statement of another person. He does not sate the time of the accident, where and when the accident occurred. His declaration also conflicts with the injury report: he says "Plaintiff missed a step" yet the injury report says he lost his footing.[158] He also states in Paragraph 3, line 25 the longshoremen were sent to "unlash" containers; & the report says "lashing containers"; these are different jobs. Ozene has no personal knowledge as to how the accident happened and his declaration should be excluded.

## C. <u>Declaration of Dr. Lundy</u>

Plaintiff objects to the ¶ 3-5 paragraphs of the Declaration of Dr. Lundy as hearsay and it is incomplete. The exhibit report is not attached; it is missing page 2. The Declaration should be stricken as it is incomplete and inaccurate. It lacks accuracy in the manner of accident. Lundy did not take a history and no such statements were made to Lundy.

## VI. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment should be denied as there are genuine issues of material fact to be determined at trial.

Dated: 1 July 2021                                    BIRNBERG & ASSOCIATES


                                                      By: /s/    Cory A. Birnberg
                                                          Cory A. Birnberg
                                                          Attorneys for Plaintiff

BIRNBERG &
ASSOCIATES

1083 MISSION ST.
THIRD FLOOR
SAN FRANCISCO
CA, 94103
TEL (415) 398-1040
FAX (415) 398-2001

---

[158] See also CAB ¶ 15-16 for more discussion of issues with Mr. Ozene's Declaration.