1  JAMES J. TAMULSKI (SBN: 64880)
   jtamulski@grsm.com
2  GORDON REES SCULLY MANSUKHANI, LLP
   275 Battery Street, Suite 2000
3  San Francisco, CA 94111
   Telephone: (415) 875-3157
4  Facsimile: (415) 986-8054

5  Attorneys for Defendant
   NYK SHIPMANAGEMENT PTE LTD
6  (ERRONEOUSLY SUED AS NYK SHIP
   MANAGEMENT)
7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEREKET WOLDEGIORGIS | CASE NO. 3:18-cv-07678-EDL |
| Plaintiff, | **DEFENDANT NYK SHIP MANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| Vs. | |
| NYK SHIP MANAGEMENT; DOES 1 THROUGH 10, INCLUSIVE | |
| Defendants. | Fed. R. Civ. P. 56(c) |
| | Date: August 6, 2021
Time: 10:00 a.m.
Judge: Magistrate Alex G. Tse
Courtroom: E, 15th Floor |
| | Filed concurrently with: |
| | Second Declaration of James Tamulski |

Defendant NYK SHIPMANAGEMENT PTE. LTD (hereinafter "NYK") submits its Reply brief in support of its Motion for Summary Judgment against the causes of action alleged by Plaintiff Bereket Woldegiorgis (hereinafter "Plaintiff") in his Complaint.

# TABLE OF CONTENTS

| | | Page |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | FACTS & ARGUMENT | 2 |
| II. | THE LAW | 7 |
| III. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bjaranson v. Botelho Shipping Corp., Manila*
  873 F.2d 1204 (9th Cir 1989) .................................................................................................. 10

*Ludwig v. Pan Ocean Shipping Co., Ltd.*
  941 F.2d 849 (9th Cir. 1991) ................................................................................................... 10

*Pimental v. Ltd Canadian Pacific Bul*,
  965 F.2d. 13 (5th Cir. 1992) ................................................................................................... 8, 9

*Polizzi v. M/V Zephyros II Monrovia*,
  860 F.2d 147 (5th Cir. 1988) ................................................................................................... 10

*Scindia Steam Navigation Co .v. De Los Santos*
  451 U.S. 156 (1981) ........................................................................................ 2, 7, 8, 9, 10, 11

*Taylor v. Moram Agencies*,
  739 F.2d 1384 (9th Cir. 1984) ................................................................................................ 8, 9

**Statutes**

33 United States Code
  Section 941 .............................................................................................................................. 13

**Treatises**

29 Code of Federal Regulations
  Section 1918.1 ......................................................................................................................... 11

29 Code of Federal Regulations
  Section 1918.92 ....................................................................................................................... 11

## I. INTRODUCTION

Plaintiff's Opposition brief and supporting documents comprise a large number of pages. In summary, they reveal that contrary from Defendant's experience at Port of Oakland the longshoremen often ask members of the ship's crew to provide lighting for them. Defendant never denied that its crewmen can provide lighting. In fact, a document Plaintiff filed confirmed that crewman Salcedo provided lighting on the evening Plaintiff fell in response to a request from Plaintiff's employer SSA (i.e. the "ship's cargo superintendent".) (See, Ex. G, Birnberg Decl. Able Seaman Benjie G. Salcedo's Statement of Facts.) Regardless, the custom and practice on the West Coast is that the longshoremen's employer, i.e. the stevedoring company, is *responsible for* providing lighting for the longshoreman pursuant to the Pacific Coast Marine Safety Code ("PCMSC"), a binding agreement entered into between all the stevedoring companies and the vessel owners and operators whose vessels call on the West Coast and require stevedoring services. There is no evidence that the PCMSC has been abrogated. Both parties agree that it is in force and it clearly provides that the stevedore is responsible to provide lighting, i.e. "adequate illumination," on container vessels. Because vessels voluntarily provide lighting when asked does not change the stevedore's obligations under PCMSC, nor the law, regulations and case decisions which all state that the stevedore is required to ensure that adequate lighting is provided to longshoremen working aboard vessels.

Further, the lighting is irrelevant as (1) there is no evidence that anyone asked for lighting to see grease that Plaintiff may have deposited on the catwalk he worked upon; and (2) the presence of grease and any concern over lighting occurred **after** the longshoremen began to work, and in an area under the exclusive control of the stevedore and the longshoreman. Thus, there is no evidence that Defendant failed to exercise reasonable care when it turned over the vessel to the expert and experienced stevedore and longshoremen, and Defendant had no duty to intervene once they began to work. As stated in its Memorandum of Points and Authorities, Defendant can only be held liable for a longshoreman's injuries in certain extremely narrow circumstances – none of which existed at the time Plaintiff fell. Accordingly, Defendant's

Motion for Summary Judgment should be granted.

## II. FACTS & ARGUMENT

As to the three *Scindia* duties, the evidence is that the catwalk upon which Plaintiff may have stepped in grease was clean when he came aboard and lighting *may* have become an issue after the longshoremen came aboard and it became darker. Thus, no evidence of any violation of the turnover duty.

It is also clear from the testimony that no request was ever made for light to shine on the ladder that Plaintiff was descending when he fell. *If* Plaintiff can be believed, and there are a number of reasons to doubt his credibility, he made one request for lighting, to someone who he thought was a crewman, who did not speak English, and simply walked away. (See, Tamulski Decl. Ex. G, p. 47:8-48:6; 52:10-22; 115:10-117:3) Plaintiff testified that he requested light because he was trying to unlock containers stacked five high from where he was standing on the catwalk "Because my partner and I could not see the tails on the locking cones on the 5-high containers." (See, Plaintiff Decl. p. 4, 7-8.) So he was requesting light to see locks on containers approximately 42'6" above the catwalk he was standing upon. (See, Plaintiff Decl. p. 9, 23) Plaintiff never requested light to shine on the catwalk or the ladder providing access to it.

Further, the evidence shows that the light requested was not even needed. After Plaintiff allegedly requested lighting because he "could not see the 5 high tails," he went ashore to bring back to the ship a "5 high pole" to unlock the containers. (See, Plaintiff Decl. p. 4, 15.) In doing so, he went down the subject ladder, walked on the main deck toward the gangway and in doing so walked passed the ship's crewman standing at the gangway, walked down the gangway, called for a vehicle to take him to the "black house" to obtain the "5 high pole," rode back to the vessel, placed the "5 high pole" alongside of the ship, walked up the gangway and again past the ship's crewman standing guard at the top of the gangway, and proceeded up the ladder to the catwalk where his partner was working. Upon arrival Plaintiff learned that his partner had obtained a "5 high pole" from another longshoreman and proceeded to unlock all those containers stacked five high. (Tamulski Decl. Ex. G, 54:12- 58:16); Plaintiff Decl. p. 4, 18-19) No light was ever

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

provided to that area of the ship, yet Plaintiff's partner was able to unlock the containers. Further, his partner Mr. Henriquez was able to avoid any grease that may have been deposited on the catwalk. He testified that he never encountered any slippery conditions, and did not slip on the subject ladder. (See, Tamulski Decl. Ex. H, 73:15-18; 130:24-131:6)

Thus, it appears from the evidence that the only reason Plaintiff went ashore was to secure a "5 high pole," which he failed to bring with him when he first went aboard ship. In doing so, he passed the gangway guard twice, during times when it was obviously getting darker; yet he never asked that member of the ship's crew for lighting. In all likelihood, that gangway guard was the same Able Seaman Salcedo who readily provided light following a request made by the stevedore employer after Plaintiff fell. (See, Birnberg Decl., Ex. G, Able Seaman Benjie G. Salcedo's Statement of Facts.) While going ashore he probably also passed the Lashing Boss, the Walking Boss and the Dock Boss, yet did not request lighting. It appears that on the day he fell lighting of the catwalk was not of any real concern to Plaintiff. He did not see any grease on the catwalk (Tamulski Decl., Ex. G, p. 67:7-68-2), and he did not request lighting for the catwalk those facts support the testimony of Mr. Henriquez to the effect that he did not encounter any slippery conditions. (Tamulski Decl. Ex. H, p. 73:15-18)

Plaintiff's lack of concern about lighting, and his failure to request it while walking off and returning to the ship – while it was getting darker - is understandable. He is one of the more senior longshoremen in the union (See, Decl of Woldegiorigs, 1, 24-27), who had been working aboard ships for 12 years before he fell. (See, Decl. Tamulski, Ex. G, 20:14-15) Unlashing greasy turnbuckles and dropping them on the catwalk is something he had done many times before. Yet, he never fell as a result. (See, Tamulski Decl. Ex. G, 28:14-30:20)

Apparently, lighting of the catwalk only became an issue after Defendant filed its Motion for Summary Judgment. Plaintiff's Complaint - filed 26 months after he fell - only alleges insufficient lighting to see the rungs of the ladder from which he fell. (See, Complaint, ¶ 5) Plaintiff now asks this Court to believe that his memory of that incident was better on July 1, 2021, (over 4 years and 9 months later) when he signed his Declaration under oath alleging

inadequate lighting of the catwalk.

If lighting on the day he fell was truly a concern, Plaintiff could have asked the gangway guard for lighting when he left the ship, or when he returned with the 5 high pole. There is always a member of the crew standing at the gangway when a ship is in port. (Tamulski Decl., Ex. G, 41, 5-18; Second Tamulski Decl., 2, 6-12; Henriquez Decl. 3, ¶8)

Plaintiff did not ask his lashing boss, walking boss or anyone else for lighting, (Tamulski Decl., Ex. G, 49:20-50:6), although doing so is customary. (Diggs Decl. 4, 11-12) Children first begin to perceive a fear of darkness at age two to three. (See, webmd.com) Despite the fact that it was getting darker, Plaintiff - having worked aboard ships for 12 years - was not concerned about having enough light to see grease on the catwalk, or having light shown on a ladder. This is proven by his failure to secure any such lighting during the many opportunities he had to do so.

We ask the Court to please consider Plaintiff's credibility when ruling on Defendant's Motion. Plaintiff has shown in his Opposition papers that he is willing to swear to anything to defeat the Motion.

In his Declaration Plaintiff states that Dr. Lundy made various errors in his report. Plaintiff wrote that Dr. Lundy never asked him how the accident happened, that he never told him that he missed a step, or grabbed a "pole," and that he was actually interviewed by someone else in Dr. Lundy's office. To the contrary, and while under oath, both Plaintiff and his attorney read Dr. Lundy's report during the deposition. In deposition, Plaintiff said that Dr. Lundy's report was erroneous to the extent of the amount of cigarettes Plaintiff smoked and the amount of exercise he obtained. He also said that he did not recall whether Dr. Lundy asked him how the accident happened, but if he did, that he told him the truth during the "hour and a half" he spent with Dr. Lundy. (Tamulski Decl, Ex. G, 132:7 – 137:10) Yet, Plaintiff wrote in his Declaration that he only spent five minutes with Dr. Lundy, that some other man interviewed him, and that he never said he grabbed a "pole," even though that is exactly the same word Plaintiff used to described what he grabbed as he was descending the ladder in the screen shot taken of Plaintiff's

-4- Case No. 3:18-cv-07678-EDL
**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

deposition. (Compare Plaintiff's Decl. 11, 1-18, with his above referenced testimony and the screen shot from his deposition attached as Ex. I to Tamulski Decl. Plaintiff regularly contradicts himself while under penalty of perjury.

Attached as his first Ex. A to his Declaration is a photograph Defendant produced and to which Plaintiff added written comments. He wrote: "The picture was taken during the day and the ladder is cleaned up." Plaintiff has no basis to state that the ladder was "cleaned up." He has no basis, knowledge or information to state what, if anything, was done to the ladder between the time he fell and the following day when that photograph was taken. Plaintiff never testified that he saw grease on the ladder and the Statements of Captain Dragos-Dan and Able Seaman Salsedo are to the effect that there was nothing on the ladder to clean up. (See, Decl. Birnberg, Ex. C, Statements of Facts.)

Further, in those written comments on that photograph, Plaintiff wrote that there was grease on the "smaller cut out" of the ladder, but then contradicts himself again by also writing that "It was too dark to see the cut out." Both statements cannot be true, even though made under penalty of perjury.

In addition, Plaintiff has submitted evidence to this Court which contradicts the Plaintiff's Declarations. (See, Decl. Birnberg, Ex. C, Statements of Facts.) The Master Dragos-Dan wrote, on the evening Plaintiff fell, that he found no "defects or slippery area" on the ladder or the lashing bridge (i.e. what the longshoremen call the "catwalk'). The Statement signed by Third Office Cinco provides that the ladder was free of debris and not slippery. Further, Third Officer Cinco stated that he asked someone who appeared to be a "friend" of the Plaintiff (likely he partner Mr. Henriquez) what happened and that person responded that "his partner…missed one step." Three different people who commented upon how the accident occurred all stated that Plaintiff missed a step. The person who was identified as Plaintiff's "partner," lashing boss George Ozene in his Declaration, and Plaintiff when he gave his history of the accident to Dr. Lundy. This was further confirmed in the Injury Report, i.e. Plaintiff "lost his footing." (See, Tamulski Decl., Ex. B attached to Ex. G) There is no mention in the statements made by those

-5- Case No. 3:18-cv-07678-EDL
**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

three individuals, or in the Injury Report, of any grease or any concern with the lighting.

In his Declaration, ¶ 9, Plaintiff wrote that he saw grease from turnbuckles on the catwalk before it got dark, but could avoid it. When it got dark he could not see it or avoid it, and he stepped in it and later saw it on his shoes. Again, to the contrary, in Deposition Plaintiff testified under oath that he never saw grease on the catwalk (Tamulski Decl., Ex. G, p. 67:7-68-2), that he did not know where the grease on his shoes had come from (See, Tamulski Decl., Ex. G, 89:7-90:5), and that at no time while working on the catwalk did he think it was dangerous to work there. (Tamulski Decl., Ex. G, p. 66:2-5). It appears that Plaintiff never made any effort to ensure that what he wrote in his Declarations under oath coincided with what he testified to in deposition.

Finally, with respect to Plaintiff's credibility and the first Ex. A attached to his Declaration, he appended comments to that photo stating that the second "cut out is smaller and only [the] toe" of his boot would fit in. Again in his Supplemental Declaration, also under penalty of perjury, he wrote that the second "cut out" from the top of the ladder is "smaller than the first one." Those are completely false statements.

I asked my client to provide the measurements of the two "cut outs" on that ladder. They are both exactly the same size, i.e. 300 mm long and 15 mm high, or 11.811" wide and 5.906" high. A drawing of the dimensions of the "cut outs" is attached to my Second Declaration, along with photographs I requested showing a crewman descending a ladder with the exact same dimensions. (Second Decl. Tamulski, Exs. L and M)

Thus, despite not having any actual proof, Plaintiff was willing to "declare under penalty of perjury" that the size of the second "cut out" on the ladder was smaller than the other, and that "only the toe of" his size 8 boot would fit in. The photos prove otherwise. (Second Decl. Tamulski, Ex. M)

Plaintiff argues that there was no alternative to his climbing down the ladder with his personal tool in his left hand. But that is simply not true. His partner testified that some longshoremen carry their tool hooked to their belts, or in backpacks, so that their hands are free.

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

(Tamulski Decl., Ex. H, p. 40:16-41:20; 130:16-20) Plaintiff, who admitted that he was of smaller stature with likely smaller hands, simply choose what proved to be a less safe method of carrying his personnel tool in his left hand while descending the ladder.

Defendant respectfully submits that Plaintiff's willingness to say or write anything "under penalty of perjury" should be considered by this Court when ruling on Defendant's Motion.

## II. THE LAW

Plaintiff argues that this "type of issue is inappropriate for resolution at the summary judgment stage." The myriad number of cases that have been decided upon filing a motion for summary judgment prove otherwise.

Plaintiff incredibly argues that Defendant violated the turnover duty because "it knew or should have known about the lack of lighting and grease." But when the ship was turned over to the "expert and experienced" stevedore and longshoremen the catwalks were free of grease and it was daylight. (Tamulski Decl. Ex. G, 37:3-12; Ex. H, p. 53:8-20; 54:8-11; 55:1-4.) Plaintiff clearly does not understand what is required under the turnover duty.

Plaintiff argues that Defendant had a duty to intervene because of the grease and "inadequate lighting." That statement completely ignores *Scindia Steam Navigation Co .v. De Los Santos* 451 U.S. 156, 165 (1981). The Supreme Court held that the vessel has ***no*** general duty to supervise or inspect the stevedore's cargo operations to discover dangerous conditions that develop during those operations *Scindia*, 451 U.S. at 164 n.10 and 172.

> … we cannot agree that the vessel's duty to the longshoremen requires the shipowner to inspect or supervise the stevedoring operation…It would be inconsistent with the [LHWCA] to hold, nevertheless, that the shipowner has a continuing duty to take reasonable steps to discover and correct dangerous conditions that develop during the loading or unloading process. Such an approach would repeatedly result in holding the shipowner solely liable for conditions that are attributable to the stevedore, rather than the ship. *Scindia*, 451 U.S. at 168-9.

-7- Case No. 3:18-cv-07678-EDL
**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff cited to *Pimental v. Ltd Canadian Pacific Bul*, 965 F.2d. 13 (5th. Cir. 1992). But that decision completely supports Defendant here. In that case, the longshoreman argued that the vessel owner violated the turn over duty because if failed to warn the stevedore that there was oil and grease on a passageway in a crane housing and that the lighting was inadequate. Plaintiff fell on that grease and argued that the defendant failed to turn over a safe ship and warn the stevedore about that grease.

The Fifth Circuit quoted from *Scindia* in stating that the vessel had a duty to warn the stevedore of any hazards with respect to its equipment that are known, or should be known to the vessel, that are likely to be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore **and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.**" (Emphasis added.) *Pimental*, 965 F.2d. at 16.

It also noted that under *Scindia* "Generally speaking, the defendant has not breached its duty to turn over a safe vessel if the defect causing the injury is open and obvious and one that the longshoreman should have seen." (Id.) The evidence before this Court is that Plaintiff and his partner knew there was grease on the turnbuckles and that dropping them down on the catwalk would likely result in grease being on the catwalk. According to the testimony of the Plaintiff, his partner and other longshoremen who signed Declarations, grease is commonly transferred from turnbuckles to catwalks while unlashing. Regardless of whether Plaintiff actually saw grease it is clear from his testimony that he expected it to be there, and if it was he should have seen it. As a result, under *Scindia* it was the stevedore's responsibility to correct that condition **if reasonably competent**. When testimony reveals that a certain condition that arises is normal during cargo operations and should be anticipated, it is reasonable for the vessel to expect the stevedore will do what is necessary to maintain a safe place for the longshoremen to work. *Taylor v. Moram Agencies*, 739 F.2d 1384, 1388 (9th. Cir. 1984) Please recall that Plaintiff testified that at no time while working on the catwalk did he think it was dangerous to work there (Tamulski Decl., Ex. G, p. 66:2-5). Similarly, his partner Mr. Henriquez never thought the ship

-8- Case No. 3:18-cv-07678-EDL
**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

was too dangerous to work, (Tamulski Decl. Ex. H, p. 56-1-4), this despite the grease they may have been transferring to the catwalk.

When the difficulty of dealing with a certain longshoring operation is well known to the experienced stevedore and its longshore personnel, it is their duty to take appropriate precautions to avoid any danger that may arise. When a shipowner has turned over a vessel in safe condition he has the right to rely on the stevedore to avoid exposing the longshoremen to hazards which develop with the confines of the cargo operation. *(Id. at* 1386-87)

In *Pimental* the Fifth Circuit concluded that the vessel did not violate the turnover duty, nor the active control duty because the crane housing were Pimental fell was not under the active control of the vessel. Similarly, the catwalk and ladder going to it were under the active control of the stevedore SSA as that area of the ship had been turned over to them to unlash containers. Under those facts the vessel could not, and did not, violate the turnover duty.

Finally, the Fifth Circuit concluded that the vessel had not violated the duty to intervene, which under *Scindia* requires **actual knowledge** of a dangerous condition and **actual knowledge** that the stevedore - in the exercise of "obviously improvident" judgment - has failed to remedy a dangerous condition. *Scindia*, 451 U.S. at 175-176. There is no evidence before this Court that the presence of grease and the lighting was a dangerous condition that expert and experienced stevedore and its longshoremen could not correct. Nor is there any evidence that the expert and experienced longshoremen would be so "obviously improvident" as to proceed to walk on a catwalk upon which they deposited grease and then climb ladders without taking any safety precautions, **if** that was a dangerous condition. The stevedore and the longshoremen deal with greasy turnbuckles on every container ship that comes to the Bay Area. The Defendant here, like the Defendant in *Pimental*, did not have "actual knowledge that it could not rely on the stevedore to protect its employees and that if unremedied the condition posed a substantial risk of danger." *Pimental*, 965 F.2d. at 17. The Fifth Circuit approved of the District Court's granting the defendant a directed verdict. Defendant submits the Ninth Circuit would similarly approve of this Court' granting Defendant summary judgment.

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

As to the vessel's duty to warn of hazards on the ship, it is limited to those known, or should be known, to the vessel, in the exercise of reasonable care that would likely be encountered by the stevedore during cargo operations, and that **are not known** by the stevedore and **would not be obvious to or anticipated by** longshoremen if reasonably competent in the performance of his work. *Scindia*, 451 U.S. AT 167. In *Ludwig v. Pan Ocean Shipping Co., Ltd.* 941 F.2d 849 (9th Cir. 1991) the Ninth Circuit reversed the district judge who ruled that the shipowner breached the duty to warn. The longshoreman had been injured when he stepped down from a ladder onto snatch blocks nestled in a coiled lashing cable located at the bottom of the ladder. He had noticed the obvious hazard when he approached to ladder to ascend it, but had momentarily forgotten about it while descending the ladder. The Ninth Circuit held:

> A competent longshoreman whose work requires him to ascend and descend a ladder must anticipate that any hazard that he observes at the bottom, on ascending, may very well be there when he comes down. Momentarily forgetting the hazard does not erase the notice given by its presence. *Ludwig* at 851.

Conversely, an experienced longshoreman, like Plaintiff here, and an experienced stevedore like SSA, should be able to anticipate that any condition believed to be hazardous on a catwalk at the top of a ladder, i.e. grease, may very well be hazardous while descending the ladder that provides access to the catwalk, and do something about it. That is not Defendant's responsibility. Without actual knowledge of a dangerous condition that the stevedore would improvidently refuse to correct, the vessel has no liability to Plaintiff.

The expert and experienced stevedore must be "…mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service…" and be able to conduct cargo operations safely. *Bjaranson v. Botelho Shipping Corp., Manila* 873 F.2d 1204, 1208 (9th Cir 1989). Similarly, a longshoreman is also an expert who is required to be "mindful" of what he perceives may be hazards, such as grease he deposits on a catwalk, and not be forgetful of them. "A shipowner is not required to 'anticipate the action or inaction of a careless stevedore.' *Polizzi v. M/V Zephyros II Monrovia*, 860 F.2d 147, 149 (5th. Cir. 1988)." *Ludwig* at

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

852.

Plaintiff wrote that he was aware of the possibility of grease being on his shoes while on the catwalk. All he needed to do was look at the bottom of his shoes before descending the ladder to see if there was grease on them and, if so, wipe or scrape it off. Had he been "mindful," doing so would have been a quick and simple solution to what he now claims was a hazard.

As to the lighting, Plaintiff argues that it was Defendant's duty to provide lighting and refers to the Pacific Coast Marine Safety Code ("PCMSC") and regulations. But as pointed out in Defendant's initial Memorandum, the **responsibility** to provide lighting rests with the stevedore. The PCMSC so states in two sections quoted in that Memorandum, namely 304 and 1501. And the PCMSC mirrors the law. It also does provide that the vessel shall ensure that cargo lights shall be in good condition and well maintained; but in doing so it reinforces the obligation of the stevedore to provide adequate illumination by referring to Safety Rule 304. (See, Birnberg Decl., Ex. B Rules 227 and 304)

The Safety and Health Regulations for Longshoring, 29 C.F.R. §1918.1 *et. seq*, apply to stevedores not vessels. And 29 C.F.R. §1918.92, states:

(a) All walking and working areas shall be adequately illuminated …

(c) Employees [i.e. longshoremen] shall not be permitted to enter dark holds, compartments, decks, or other places without a flashlight.

These regulations squarely place the responsibility to provide lighting, and a safe place to work, upon the stevedore, an obligation the Supreme Court recognized and endorsed in *Scindia*. The vessel will provide lighting when a request has been properly communicated to it, but the **responsibility** to provide lighting remains with the stevedore pursuant to statute, regulations and case law.

Finally, Plaintiff argues, without any basis in fact or law, that Defendant somehow violated provisions of the ISM Code. The apparent basis for this argument is that Plaintiff requested production of "any and all ISM code risk analysis regarding the vessel NYK THESEUS for the time period 10/1/2015 – 10/31/17." Defendant properly objected to that

-11- Case No. 3:18-cv-07678-EDL
**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Request as "overly broad in scope, and thus burdensome and oppressive, and that it seeks items and information that is neither relevant, or if relevant, so remote as to make disclosure of no practical value." (See, Birnberg Decl. Ex. K)

That objection, along with the production of some documents, was served on Plaintiff's counsel on March 9, 2020, i.e. over 16 months ago. Plaintiff's counsel never revised his request in light of the objections, never requested a meet and confer to discuss those objections, never filed a motion to compel production of the documentation sought by that request. Despite the obvious implication that there was merit to the objection, Plaintiff argues -without any evidence at all - that Defendant was in violation of ISM Code requirements. The argument has no merit and Defendant will not address it any further.

## III. CONCLUSION

If this Court does not grant Defendant summary judgment it will convey a message to expert longshoremen that they can expose themselves to potentially hazardous conditions, increase the risk of injury to themselves by climbing ladders while holding things in their hands, not take any precautions to protect themselves, and hold the vessel responsible if they suffer injury. If this Court does not grant Defendant summary judgment it will convey a message to expert longshoremen that although they can see that it is getting dark, they can make an unrecognized request for lighting, make no further attempts to obtain lighting despite having multiple opportunities to do so, suffer an injury and recover damages from the vessel, even if the lighting requested proved to be unnecessary. If this Court does not grant Defendant summary judgment it will convey a message to expert longshoremen that they have no obligation to look at their feet if they step in grease because the vessel will compensate them for their injuries if they fall.

On the other hand, if this Court grants Defendant's Motion for Summary Judgment it will recognize that the stevedoring companies are the experts and responsible for the longshoremen's safety, that vessel owners and operators may only be found liable for injuries in narrow, well delineated circumstances, none of which are present here, and that under Section 41 of the

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Longshore and Harbor Workers Compensation Act ("LHWCA") the stevedore, as the longshoremen's employer, is required to provide a "reasonable safe" place to work and to take such safeguards with respect to equipment and working conditions as are necessary to avoid injury to the longshoremen, 33 U.S.C §941. Defendant respectfully asks the Court to enforce the law.

Dated: July 15, 2021

GORDON REES SCULLY MANSUKHANI, LLP

By: *James J. Tamulski* (signature)
James J. Tamulski
Attorney for Defendant
NYK SHIPMANAGEMENT PTE LTD

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon Rees Scully Mansukhani, LLP 275 Battery Street, Suite 2000, San Francisco, CA 94111. On July 15, 2021, I served the within documents:

**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

☐ **By Electronic Transmission:** by e-mailing the document(s) to the persons at the e-mail address(es) listed below. During the Coronavirus (Covid-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒ **BY ELECTRONIC TRANSMISSION:** Through the CM/ECF System which automatically generates a Notice of Electronic Filing at the time said document is filed to the email address(es) listed in the Electronic Mail Notice List, which constitutes service pursuant to FRCP 5(b)(2)(E).

Attorneys for Plaintiff
**Bereket Woldegiorgis**

Cory A. Birnberg
Birnberg & Associates
1083 Mission Street
3rd Floor
San Francisco, CA 94103
415-398-1040
415-398-2001 (fax)
birnberg@birnberg.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 15, 2021, at San Francisco, California.

_M. Guerrero_
Mario Guerrero

-14-  Case No. 3:18-cv-07678-EDL
**DEFENDANT NYK SHIPMANAGEMENT PTE LTD'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**